**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Antonio SANTIA–MANRIQUEZ and**
**Alfredo Santiago-Rodriguez,**
**Defendants-Appellees.**

**No. 78–2940**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 1, 1979.

---

\* Rule 18, 5th Cir.; *see Isbell Enterprises, Inc.* v. *Citizens Casualty Co. of New York et al.,* 431 F.2d 409, 410–14, 5th Cir., 1970.

LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellant.

Lawrence L. Barber, Jr., Monahans, Tex., for Santia-Manriquez.

R. B. Jerry McGowen, III, Pecos, Tex., for Santiago-Rodriguez.

Before GOLDBERG, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

This is an appeal by the Government from an adverse ruling on a motion to suppress. The appellees Manriquez and Rodriguez were charged jointly in a one-count

indictment with possession of 22 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1976). On July 28, 1978, at the conclusion of a hearing on their motion to suppress the marijuana, the district judge orally granted the motion from the bench, and his order was entered in the criminal docket. On August 25, 1978, the Government, in Manriquez's case, filed its notice of appeal from that order; on September 5, 1978, it filed a notice of appeal in Rodriguez's case. Since the latter notice was not filed within the thirty-day period specified by Fed.R.App.P. 4(b), the appeal as to Rodriguez is dismissed.[1] As for Manriquez's case, we find the district court's ruling to be correct and affirm.

In the afternoon of April 23, 1978, Border Patrol Agent Chester Wilson received a tip in Alpine, Texas, from a reliable informant that a large group of illegal aliens would be transported that night out of Coahuila, Mexico, into Texas, and then north on U.S. Highway 385. Two vehicles were to be used by the smugglers, a blue and white Ford van, for which a license plate number was given, and an unidentified vehicle. That night Agents Wilson and Danny R. Newberry commenced a surveillance of Highway 385 in a sparsely populated area north of Big Bend National Park, at a point approximately 28 miles from the Mexican border. The agents chose the spot because considerable smuggling activity had occurred there. At 1:00 a.m. they saw a southbound vehicle and soon heard someone trying to strike up a conversation over a CB radio. There was no response. A few minutes later the sensor in the northbound lane of the highway was tripped, and a 1976 Chevrolet Malibu, equipped with a CB antenna, went by. The agents observed but one occupant, the driver. They speculated that it was the lead vehicle in a "lead car/load car" smuggling attempt and assumed that the Ford van, described in the informant's tip, would be following. The

agents did not await the van, however, deciding instead to follow the Malibu. What transpired thereafter was told somewhat differently by the two agents at the suppression hearing. Wilson said they entered Highway 385 with their headlights off, but turned them on shortly thereafter. He was then able to see fresh handprints on the dusty trunk deck of the Malibu. After following the Malibu awhile he saw a passenger (Manriquez) pop up in the back seat and talk to the driver (Rodriguez). The Malibu then slowed from 60–65 miles per hour to 30–35 miles per hour; it was being driven erratically. The driver kept looking into his rear view mirror; the passenger turned to observe the agent's patrol car. After following the Malibu several miles, he decided to stop it and turned on his beacon lights. The Malibu seemed to take longer than normal to stop.

Agent Newberry, on the other hand, thought they followed the Malibu for a mile or so before turning on their headlights and, within seconds, their beacon lights. He did not thereafter observe the fresh handprints on the trunk that Wilson noticed. He did agree with Wilson that the Malibu was being driven somewhat erratically. As to the chain of events that took place once the Malibu stopped and the marijuana was discovered, the testimony of the two agents was in harmony. After they stopped the Malibu, and while Wilson was in the process of making a radio check of the suspects' driver's licenses, Manriquez attempted a getaway. The agents soon caught up with him, and, as he was running from the car, he dropped a package which, it was later ascertained, contained the marijuana which formed the basis for the indictment.

The district court suppressed the marijuana because he considered the stop to be illegal and the marijuana the fruit of the poisonous tree. He vitiated the stop be-

1. On October 4, 1978, the district court handed down a written order embodying its July 28 verbal order. Since the July 28 order was effective for appeal purposes within the meaning of Fed.R.App.P. 4(b) "when it [was] entered in the criminal docket" the same day, the subsequent memorialization of the order on October 4 could not operate to save the Government's untimely notice of appeal.

cause he found that Agents Wilson and Newberry had no facts before them that would warrant a reasonable suspicion, much less probable cause, that the Malibu was unlawfully transporting aliens into this country or that criminal activity was underway. We think it entirely within the province of the district judge to have made that finding.

The district court's findings are entitled to our acceptance unless clearly erroneous. *United States v. Duckett,* 583 F.2d 1309, 1313 (5th Cir. 1978). Though the court did not make detailed findings of fact, it clearly had before it testimony, chiefly that of Agent Newberry, that would authorize the finding that the agents started tracking the Malibu with nothing more than a rank hunch; they possessed no facts indicating that it was part of a lead car/load car procession. The second vehicle was never seen; nor did one arrive to trip the sensor that had alerted the agents earlier to the Malibu's northbound approach. In short, the court was fully warranted in concluding that no articulable facts were presented to the agents that would entitle them to suspect that the Malibu was carrying illegal aliens into the country. *See United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975). We think our decisions in *United States v. George,* 567 F.2d 643 (5th Cir. 1978), and *United States v. Frisbie,* 550 F.2d 335 (5th Cir. 1977), compel the conclusion that the stop was invalid.

The Government suggests that there is an independent ground to sustain the admissibility of the marijuana. It says that in running from the agents and casting the package aside Manriquez evinced an intent to rid himself of the incriminating marijuana, and hence relinquished any expectation of privacy in its contents through his act of abandonment. Precedent in the Supreme Court and this circuit, however, forecloses this theory of admissibility.

To be sure, the voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, *see United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.

1973) (en banc); an abandonment is not deemed voluntary, however, if it is merely the product of police misconduct. *See United States v. Beck,* 602 F.2d 726, 729 (5th Cir. 1979); *United States v. Maryland,* 479 F.2d 566, 568 (5th Cir. 1973) (per curiam). Though the trial judge made no mention of the abandonment issue in stating his reasons for granting the motion to suppress, we think it clear that the claimed abandonment in this case was the product of the unlawful Border Patrol stop. The Government's alternative theory of upholding the seizure of the marijuana thus fails.

AFFIRMED.