**Leroy COMER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 265–84.**

Court of Criminal Appeals of Texas, En Banc.

April 9, 1986.

Rehearing Denied April 13, 1988.

Rehearing Dismissed May 28, 1988.

Richard Alley (court appointed), Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, David L. Richards, Gary Medlin and Christopher J. Pruitt, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant pled guilty to possession of heroin and was sentenced to fifteen years' incarceration in the Texas Department of Corrections. Appellant preserved his right to appeal the denial of his Motion to Suppress.

The Fort Worth Court of Appeals, in an unpublished opinion, concluded that there was sufficient probable cause to support appellant's arrest. *Comer v. State*, No. 2–83–317–CR (Tex.App.—Ft. Worth, delivered January 11, 1984). Accordingly, the Court of Appeals found the trial court's denial of appellant's Motion to Suppress proper. Although properly raised by appellant, for reasons not made clear in the opinion, the Court of Appeals did not decide whether the initial detention was adequately supported by probable cause. We granted appellant's petition for discretionary review to determine whether the arresting officers had sufficient reasonable suspicion to initiate the investigatory stop which preceded the arrest.

At 7:40 p.m. on Saturday, November 6, 1982, Officers Cook and Burnette observed appellant and another male sitting in the cab of a pickup truck in the parking lot of Frank's Barbeque Restaurant located on East Rosedale in Fort Worth. The interior dome light was on and the two men were engaged in some activity concentrated on the seat between them. As the officers entered the parking lot the truck began to pull away, at which time the officers, believing some criminal activity to be taking place, initiated an investigatory stop.

After appellant emerged from the truck Officer Cook saw him drop a syringe onto the pavement and attempt to kick it under the truck. The syringe was later analyzed and found to contain heroin. Each officer testified that the part of town where the incident occurred was a high crime area and that, based upon their knowledge and experience, they believed that some criminal activity was taking place. Although the officers also testified that they believed that the restaurant was closed, the owner of the restaurant, Frank Taylor, testified that he never closed the establishment before 10:00 p.m. on Saturday nights.

It is well established that an officer may briefly stop a suspicious individual, whether a pedestrian or a passenger in a vehicle, in order to determine his/her identity or to maintain the status quo while obtaining further information. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Johnson v. State*, 658 S.W.2d 623 (Tex.Cr.App.1983). However, in order to justify such a stop the officer must have "specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from the facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation." *Johnson*, supra, at 623. Detention based on a hunch is illegal. *Williams v. State*, 621 S.W.2d 609 (Tex.Cr.App.1981). These "specific articulable facts" must create in the individual officer's mind a reasonable suspicion that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." *Johnson*, supra, at 626.

In *Tunnell v. State*, 554 S.W.2d 697 (Tex.Cr.App.1977), this court held the basis for the investigatory stop insufficient. In *Tunnell*, supra, a police officer observed the defendant and two other men seated inside a parked car in a well-lighted hospital parking lot at 2:16 a.m. The officer was aware that a nearby Kraft Food Company plant operated 24 hours per day but decided the activity was suspicious and decided to investigate. As the officer approached the parking lot the vehicle began to move away. After following for some time the officer stopped the car.

In *Johnson*, supra, this Court again found the basis for the investigatory stop insufficient. In *Johnson*, supra, the officer observed the defendant's pickup truck parked in the lot of a McDonald's restaurant at 5:00 a.m., a time at which the restaurant was closed. The bed of the pickup truck was loaded with furniture. The officer thought this suspicious, ap-

proached the truck and ordered the defendant out.

The facts of the instant case are remarkably similar to those in *Tunnell,* supra, and *Johnson,* supra.

We find it difficult to discover any facts showing activity out of the ordinary in the instant case save that the officer described the area as being one of high crime and that appellant attempted to leave as the officers approached. In any case, the events in the instant case, like those in *Tunnell,* supra, and *Johnson,* supra, are as consistent with innocent activity as they are with criminal activity. Where this is true the detention is unlawful. *Shaffer v. State,* 562 S.W.2d 853 (Tex.Cr.App.1978). As this detention was unlawful the contraband recovered as a result of the ensuing search was inadmissible. *Baldwin v. State,* 606 S.W.2d 872 (Tex.Cr.App.1980).

Accordingly, the judgments of the Court of Appeals and the trial court are reversed and the cause is remanded to the trial court.

Before the court en banc.

### OPINION ON STATE'S MOTION FOR REHEARING

TEAGUE, Judge.

■ On original submission we held that the arresting officer lacked sufficient reasonable suspicion to initiate the investigatory stop which preceded appellant's arrest. We adhere to what we stated and held on original submission. However, the State now argues that our inquiry must not end with this determination, but that we must also decide whether the appellant voluntarily abandoned the heroin-filled syringe. We agree. If appellant voluntarily abandoned the syringe, then the contraband became admissible evidence against appellant, notwithstanding the illegality of the initial detention. For the reasons articulated below, we hold that appellant did not voluntarily abandon the contraband, but rather relinquished it as a result of police misconduct.

Although it is true that an accused person's abandonment of property or evidence can remove the taint of an illegal arrest, stop, or detention, it is also true that for this to occur the abandonment must be actually voluntary and not merely the result of police unlawfulness. *United States*

*v. Beck,* 602 F.2d 726, 729–730 (5th Cir. 1979). Moreover, the results of a search or seizure will never attenuate unlawful police conduct nor will it be considered in making the determination whether the police were initially acting lawfully. *Taylor v. State,* 604 S.W.2d 175 (Tex.Crim.App.1980).

That voluntariness is an integral component to the concept of abandonment has been made clear in several decisions by the Fifth Circuit Court of Appeals. "To be sure, the voluntary abandonment of evidence can remove the taint of an illegal stop or arrest ...; an abandonment is not deemed voluntary [however] ... if it is merely the product of police misconduct [and, therefore, cannot vitiate the taint of an illegal detention.]" *United States v. Santia–Manriquez,* 603 F.2d 575, 578 (5th Cir.1979). "The only courts that have allowed the seizure of evidence that was thrown ... have emphasized that 'no improper or unlawful act was committed by any of the officers' prior to the evidence being tossed ...'" *Fletcher v. Wainwright,* 399 F.2d 62, 64 (5th Cir.1968). See also *United States v. Morin,* 665 F.2d 765, 770 (5th Cir.1982); *United States v. Beck,* supra, at 726; *United States v. Colbert,* 474 F.2d 174 (5th Cir.1973).

Ringel, in his highly respected work entitled *Search & Seizures; Arrests and Confessions* (1985), expresses the concept of voluntary abandonment this way:

> The intent to abandon implies voluntariness. Abandonment cannot be voluntary if it has been coerced by unlawful police action such as approaching a suspect with the intention to arrest without probable cause of the initiation of an illegal investigatory stop or search. Therefore, when the police are illegally threatening to arrest and search a suspect, and the suspect attempts to divest himself of incriminating evidence that he reasonably believes will inevitably be discovered, his efforts do not constitute such an 'abandonment' or voluntary exposure as would waive his constitutional right to later move for suppression of the evidence thus obtained ... (Citations omitted.) *Id.,* at Vol. 1, § 8.04(a).[1]

Texas case law has not always focused on the voluntariness of the abandonment in light of police misconduct. Instead, some decisions opted to merely conclude that "[w]hen police take possession of aban-

---

**1.** Also see "Seizure of Abandoned Property," *Search and Seizure Law Report,* Vol. 1, No. 13, November, 1974; "Abandonment of Property Under the Fourth Amendment," *Id.,* Vol. 10, No.

1, January, 1983; 1 *Am.Jur.2d* Abandoned, Lost, Etc., Property § 1; Annot., 40 *A.L.R.4th* 381 (1985).

doned property, there is not seizure under the Fourth Amendment." *Clapp v. State,* 639 S.W.2d 949, 953 (Tex.Crim.App.1982), and cases cited therein. See also *Rodriguez v. State,* 689 S.W.2d 227, 230 (Tex. Crim.App.1985) (Abandoned contraband is not obtained as a result of a search even when the police utilize a pretext to stop the defendant); *McClain v. State,* 505 S.W.2d 825, 827 (Tex.Crim.App.1974); *Tatum v. State,* 505 S.W.2d 548, 550 (Tex.Crim.App. 1974).

Other cases, however, limit the inquiry to the defendant's intent to abandon the property. See *Sullivan v. State,* 564 S.W.2d 698, 702 (Tex.Crim.App.1978) (opinion on rehearing) ("Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts,") citing and quoting *United Stated v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973). See also *Smith v. State,* 530 S.W.2d 827 (Tex.Crim.App.1975); *Hudson v. State,* 642 S.W.2d 562 (Tex.App.— Fort Worth 1982); *French v. State,* 636 S.W.2d 749 (Tex.App.—Corpus Christi 1982).

■ What both lines of cases do not make clear is that abandonment consists of two components: 1) a defendant must intend to abandon property, and 2) a defendant must freely decide to abandon the property; the decision must not merely be the product of police misconduct. See *United States v. Beck,* supra. To the extent that any of these cases conflict with that notion, they are overruled. We hold that to resolve abandonment issues there must be a determination of whether the accused voluntarily abandoned the property independent of any police misconduct.

We now turn to the facts of the case at bar to determine whether appellant voluntarily abandoned the syringe. Appellant was a passenger in the vehicle which the police were unlawfully pursuing. The arresting officer testified that when appellant exited the vehicle appellant dropped "something" from his hand to the pavement and attempted to kick this object under the vehicle. The object turned out to be the syringe.

To make the determination of voluntary abandonment we must determine if appellant intended to abandon the syringe and, if so, then determine whether or not appellant's decision to abandon the contraband was merely the product of the illegal acts of the police. It is questionable whether appellant intended to abandon the syringe,

or whether he was only attempting to conceal it. Assuming, *arguendo,* that appellant intended to abandon the syringe, we cannot conclude that this relinquishment was independent of the unlawful police conduct. To the contrary, we find that the decision to abandon the property was a *direct result* of the police misconduct. Therefore, appellant's relinquishment of the syringe did not remove the taint of the illegal police conduct.

The right of the people of this State to be free from unreasonable searches and seizures involves the right to be let alone, which is probably the most comprehensive of all our constitutional rights, as well as one of the rights most valued by civilized men and women. *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). Unless legal justification is shown, such right must not be infringed upon by the police. We find no meaningful constitutional distinction between the situation where, because of police unlawfulness, the police search an individual and find contraband and the situation where, because of police unlawfulness, the individual throws or drops an object to the ground and the police seize it. In both instances the evidence is subject to being suppressed because it was the direct result of initial police misconduct. Unless the State establishes that the taint has been purged, such unlawfully obtained evidence should always be suppressed and should never be used to convict the accused. See *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951); *Brock v. United States,* 223 F.2d 681, 684–685 (5th Cir. 1955). "While a police officer must be vigilant and resourceful in combating crime, he is required to do so within the constitutional framework that seeks the preservation of the dignity of the individual." Moscolo, "The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis," 20 *Buff.L.Rev.* 399 (1971).

The State's motion for rehearing is overruled.

ONION, P.J., and McCORMICK, WHITE and DUNCAN, JJ., dissent.