Derrick A. STROWENJANS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–93–01583–CR.

Court of Appeals of Texas,
Dallas.

Jan. 18, 1996.

John R. Leigh, Duncanville, for appellant.

Robert P. Abbott, Coppell, for State.

Before LAGARDE [1], OVARD and MORRIS, JJ.

## OPINION

MORRIS, Justice.

In this case we decide whether Derrick A. Strowenjans may appeal the trial court's denial of his motion to suppress evidence after filing only a general notice of appeal. The State claims this Court does not have jurisdiction to consider the matter because appellant received deferred adjudication. We conclude otherwise. We assert jurisdiction to consider appellant's complaint that the trial court erred when it overruled his motion to suppress evidence seized during a police investigative stop. We conclude the police did not have reasonable suspicion to justify stopping appellant. We set aside the trial court's

1. The Honorable James A. Baker, Justice, participated in this cause at the time it was submitted for decision. Due to the appointment of Justice Baker to the Texas Supreme Court on October 3, 1995, he did not participate in the issuance of this opinion. Justice Sue Lagarde has reviewed the briefs and the recorded oral argument.

order denying appellant's motion to suppress. We reverse the trial court's judgment and remand the cause for further proceedings.

## FACTUAL BACKGROUND

At about 3:30 a.m. on May 27, 1993, while on patrol in West Dallas, two Dallas police officers saw a late model pickup truck parked in front of a known drug house. The truck was locked. It had a neat and clean appearance.

The police considered West Dallas to be a high crime area, in part because of the frequent occurrence of "car jackings" and vehicle thefts. As a result, one of the officers suspected the truck might have been stolen. He checked the truck's registration, but the truck's owner had not reported it stolen. He inspected the truck to see if it showed signs of being stolen, such as a broken window, damaged steering column, or missing radio. The truck showed no signs of forced entry or tampering. The officer continued to be suspicious and believed the truck could have been taken in a "car jacking." He decided to contact the truck's owner. He radioed the police dispatcher and learned appellant owned the truck. The dispatcher gave the officer appellant's home telephone number. The officer contacted appellant's wife.

Appellant's wife testified about her conversation with the police. She said an officer asked if she knew her husband's truck was parked in West Dallas. She said she did not and added she had last seen her husband about six o'clock the previous evening. She expressed concern about appellant after the officer mentioned "car jackings," but admitted it was not unusual for her husband to be out that late. She speculated her husband was in West Dallas because he had played softball earlier the previous evening with friends who lived in the area. She told the officer that after her husband's softball games, the team would often go to a nearby bar or to one of the ball player's homes to drink beer. The officer asked her if appellant had a drug problem, which she unequivocally denied. Although the officer said the conversation "heightened" his suspicions, appellant's wife said she was not surprised about the truck being there. She testified she was more angry that her husband was out so late than concerned about his safety.

Nonetheless, the officer continued to be suspicious because the truck was a clean and neat late model parked in a "poor" neighborhood with a high crime rate. He said, "[T]he truck did not belong in the area." The officer requested other officers in an unmarked police car to watch the truck. The officers in the unmarked car watched the truck for about forty-five minutes. They saw appellant and another person get into the truck and drive away. The officers admitted, however, that they could not identify the individuals and they did not see them come out of the alleged drug house. The officers radioed this information to the first officer and began following the truck. The first officer soon caught up with the truck and followed it for a short time.

The officers in the unmarked car followed the truck until the marked patrol car joined them. The truck traveled about two miles. There was no evidence appellant violated any traffic laws. The truck turned from the street into the Mirimar Motel parking lot. The officers said that prostitutes and drug users frequently used the motel for illegal activity. When the truck turned around in the parking lot, the first officer turned on his squad car's red lights and stopped the truck.

The officers approached appellant's truck. Appellant got out of the truck. He appeared calm as he approached the officer, and the officer said he did not smell alcohol. The officer frisked appellant for weapons and asked him for his driver's license. Appellant produced his license, which confirmed he was the truck's registered owner. Meanwhile, another officer spoke with appellant's passenger. This officer recognized the passenger as a known prostitute and drug addict. During their conversation, she told the second officer appellant had cocaine in his pocket.

When the first officer learned this, he asked appellant "if he'd mind if I went into his pockets, and he said, 'no.'" The first search evidently did not reveal the cocaine, and the officer asked appellant if he could look deeper into his pockets. The second search revealed a small amount of what later

tested to be cocaine. The police then hand-cuffed appellant and arrested him for possession of cocaine.

A grand jury indicted appellant for possession of less than twenty-eight grams of cocaine. Before trial, appellant moved to suppress the cocaine evidence. He argued the evidence was "seized during the course of and as a result of an illegal detainment, seizure, search and arrest...." The trial court conducted a hearing on the motion, after which it denied appellant's motion. Appellant immediately advised the trial court that he wished to appeal the denial of his motion to suppress. Pursuant to a plea bargain, appellant signed a judicial confession and pleaded guilty. The trial court deferred adjudication of guilt and placed appellant on five years' unadjudicated probation. At the end of the proceedings, the trial court stated it "does grant its permission for your appeal of this case" and observed "that a Notice of Appeal has been filed among the papers of this Court." The State challenges appellant's right to appeal because of the deferred adjudication and because appellant filed only a general notice of appeal.

## DISCUSSION

■ The State argues that because this case involves a plea bargain, appellant may not appeal his five years' probation and deferred adjudication. The State does not respond to appellant's nonjurisdictional point of error. Instead, the State asks us to dismiss the appeal for want of jurisdiction without reaching the merits of appellant's complaint.

■ Jurisdiction involves the court's power over the subject matter of the case. *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex.Crim. App. [Panel Op.] 1981). The State maintains that appellant's notice of appeal does not vest this Court with jurisdiction because the notice of appeal is a general notice. The State claims this Court cannot consider appellant's nonjurisdictional point of error. To support its claim, the State relies on *Davis v. State*, 870 S.W.2d 43 (Tex.Crim.App.1994), and *Lyon v. State*, 872 S.W.2d 732 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 114 S.Ct.

2684, 129 L.Ed.2d 816 (1994). We reject the State's contention because *Davis* and *Lyon* are inapposite.

■ A defendant may appeal a trial court's decision to defer adjudication only in limited circumstances. *See Dillehey v. State*, 815 S.W.2d 623, 626 (Tex.Crim.App.1991). In *Dillehey*, the court of criminal appeals examined the legislative history behind the proviso of article 44.02 of the Texas Code of Criminal Procedure, which then allowed defendants to appeal pretrial motions or other matters if the trial court granted permission to appeal.[2] *See id.;* Tex.Code Crim.Proc. Ann. art. 44.02 (Vernon 1979). The court of criminal appeals concluded the legislature "clearly ... intended for defendants placed on deferred adjudication probation to be allowed ... to immediately appeal rulings on pre-trial motions in compliance with Article 44.02." *Dillehey*, 815 S.W.2d at 626. The court in *Dillehey* expressly held a defendant may appeal an adverse ruling on a pretrial motion to suppress evidence even though he has received deferred adjudication probation and has not been adjudicated guilty. *Id.*

Rule 40(b)(1) of the Texas Rules of Appellate Procedure now includes the proviso language previously included in article 44.02 and discussed in *Dillehey*. The rule reads, in part:

Notice of appeal shall be given in writing filed with the clerk of the trial court. Such notice shall be sufficient if it shows the desire of the defendant to appeal from the judgment or other appealable order; *but if* the judgment was rendered upon his plea of guilty or nolo contendere pursuant to Article 1.15, Code of Criminal Procedure, *and* the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, *in order to prosecute an appeal for a nonjurisdictional defect or error that occurred prior to entry of the plea the notice shall state that the trial court granted permission to appeal or shall specify that those matters were*

2. The court of criminal appeals repealed the proviso of article 44.02 by orders on December 18,

1985 and on April 10, 1986, effective September 1, 1986.

*raised by written motion and ruled on before trial.*

Tex.R.App.P. 40(b)(1) (emphasis added). Contrary to the State's assertion, the emphasized part of rule 40(b)(1) is not implicated here. Appellant, pursuant to a plea bargain agreement, has received deferred adjudication probation. But, unlike the situations found in *Davis* and *Lyon,* appellant has yet to be found guilty and punishment has not been assessed. *See Ex parte Hernandez,* 705 S.W.2d 700, 703 (Tex.Crim.App.1986). In effect, appellant's notice of appeal need not comply with the conditions described in that part of rule 40(b)(1) emphasized above. In appellant's situation, he may appeal the trial court's ruling on his motion to suppress by a general notice.

In his brief, appellant points out that the trial court granted him permission to appeal. We note the record shows the trial court expressly gave appellant permission to appeal its ruling on the motion to suppress, even though this fact is not recited in appellant's notice of appeal. We conclude, however, that the question of whether the trial court gave permission to appeal is immaterial under *Dillehey* and the facts of this case. We follow *Dillehey* and assert jurisdiction to consider appellant's sole point of error.

■ In his sole point of error, appellant contends the trial court erred in overruling his motion to suppress evidence. Appellant claims his temporary detention by police was illegal under the Fourth Amendment of the federal constitution. He argues the trial court should have suppressed the cocaine evidence seized from his person under article 38.23 of the Texas Code of Criminal Procedure. Appellant argues the police based his temporary detention only upon a mere hunch or suspicion. Appellant claims the officer's testimony that appellant's truck was in a "high crime area" does not link appellant with any criminal activity and does not satisfy the standards required for a valid investigative stop.

■ An appellate court will not disturb a ruling on a motion to suppress evidence absent a showing that the trial court clearly abused its discretion. *See Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985). In reviewing the trial court's decision, we do not engage in our own factual review. Instead, we determine whether the record supports the trial court's ruling and whether the trial court properly applied the law to the facts. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). We view the evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *See id.* The trial court is the sole judge of the witnesses' credibility and the weight given their testimony. *See id.*

■ The Fourth Amendment protects citizens from unreasonable searches and seizures whenever there is a reasonable expectation of privacy. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873–74, 20 L.Ed.2d 889 (1968). A police officer may approach and question an individual in limited situations, but that individual may decline to answer any questions and go on his way. *See Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *Terry,* 392 U.S. at 15, 88 S.Ct. at 1876–77; *Cook v. State,* 832 S.W.2d 62, 66 (Tex.App.—Dallas 1992, no pet.). During a stop of a "suspicious" individual, an officer may determine the person's identity or maintain the status quo momentarily while obtaining more information. *See Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Comer v. State,* 754 S.W.2d 656, 657 (Tex.Crim.App.1986).

■ To justify such an investigative stop at the outset, however, a police officer must have "specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation." *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983); *see also Comer,* 754 S.W.2d at 657. We determine whether the facts available to an officer at the *moment of a stop* would warrant a person of reasonable caution to believe a stop is appropriate. *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–81. An officer must support even a temporary detention with reasonable suspicion, not a mere hunch. *See Williams v. State,* 621 S.W.2d 609, 612 (Tex.Crim.App.

[Panel Op.] 1981); *see also Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds by Juarez v. State,* 758 S.W.2d 772, 780 n. 3 (Tex.Crim.App.1988).

 The articulable facts relied upon by the officer must create a reasonable suspicion that some activity out of the ordinary is occurring or has occurred. *See Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App. 1989). The facts must provide some suggestion to connect the person detained with the unusual activity, and there must be some indication the unusual activity is related to crime. *See id.; cf. Wong Sun v. U.S.,* 371 U.S. 471, 482, 83 S.Ct. 407, 414–15, 9 L.Ed.2d 441 (1963). Where there are insufficient articulable facts to justify an initial detention, any evidence recovered as a result of the ensuing search is inadmissible. *See Johnson,* 658 S.W.2d at 627; *Baldwin v. State,* 606 S.W.2d 872, 874–75 (Tex.Crim.App. [Panel Op.] 1980). An officer may not justify his search by evidence seized as a result of the search. *Sibron v. New York,* 392 U.S. 40, 63, 88 S.Ct. 1889, 1902–03, 20 L.Ed.2d 917 (1967); *Brown v. State,* 481 S.W.2d 106, 112 (Tex.Crim.App.1972). The facts and circumstances upon which a detention is based must be specifically articulated as such in the record. *See Amores v. State,* 816 S.W.2d 407, 415 (Tex.Crim.App.1991). Thus, to justify an investigative detention, the officer must rely on specific articulable facts known before the stop. *See Terry,* 392 U.S. at 21, 88 S.Ct. at 1879–80.

The testimony at the suppression hearing was clear. The officers had not received any reports of vehicle thefts to draw their attention to appellant's truck. The officer did not say he observed anything to indicate appellant was engaged in illegal activity. The officer only noticed the truck was parked in front of a "drug house" in a high crime area of West Dallas. He said the presence of a neat and clean new truck in a poor neighborhood raised his suspicion the truck might be stolen. While there were no signs the truck was stolen and the officer's inspection of the truck revealed no signs of forced entry, the officer nevertheless thought appellant could have been a victim of a "car jacking."

The officer spoke with appellant's wife, attempting to confirm his suspicion that the truck was stolen. The conversation did not confirm his suspicion. Appellant's wife told the officer the truck had not been stolen. She gave the officer a rational reason for the truck's presence in West Dallas. While she expressed anger that her husband was out so late, she expressed little concern about her husband's safety or the truck. She also denied her husband was a drug user.

The officer, however, continued to suspect criminal activity. The officers who watched the truck from the unmarked car testified they did not see appellant enter or exit the "drug house" or engage in illegal drug activity. Nevertheless, the officers followed appellant to the motel parking lot. Appellant violated no laws during the time the officers watched or followed the truck. *See Viveros v. State,* 828 S.W.2d 2, 4 (Tex.Crim.App. 1992).

 Appellant's mere presence in a high crime area did not justify the officer's decision to stop the truck and question appellant. *See id.; Comer,* 754 S.W.2d at 658. The officer's belief that the truck might be stolen simply because it "did not belong in the area" amounts to no more than a mere hunch or suspicion. Appellant's conduct was as consistent with legal activity as it was with illegal activity. *See Cook,* 832 S.W.2d at 66. Only after the first officer detained appellant and ascertained he was indeed the truck owner did the officer discover cocaine in appellant's pocket.

We conclude there are insufficient facts to suggest that appellant's presence in West Dallas was related to crime. The officer lacked reasonable suspicion to detain appellant. The evidence obtained as a result of the detention was inadmissible. *See Comer,* 754 S.W.2d at 658; *Baldwin,* 606 S.W.2d at 875. The trial court erred in not suppressing the evidence of appellant's possession of cocaine. *See* TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1995). We sustain appellant's point of error.

We set aside the trial court's order denying appellant's motion to suppress. We reverse the trial court's judgment and remand the case for further proceedings.

LAGARDE, Justice, concurring.

I agree with the majority that the judgment of the trial court must be reversed. However, because I conclude that appellant's guilty plea was conditional, and thus, not knowingly and voluntarily entered, I disagree as to the reason for reversing. Consequently, I concur in the judgment only.

## PROCEDURAL BACKGROUND

The State challenges this Court's jurisdiction to review appellant's point of error. Appellant filed a pretrial motion to suppress evidence "seized during the course of and as a result of an illegal detainment, seizure, search, and arrest of the Defendant...." Following a hearing, the court denied appellant's motion to suppress.

Thereafter, the State and appellant executed a document captioned "PLEA AGREEMENT." This "agreement" provided that appellant would plead guilty. In a column titled "Type of plea," a box was checked next to the term "Plea-bargain." However, in the same column, there was a box checked next to the term "Open as to deferred." The agreement did not include either the length of confinement or the length of probation. The agreement included a fine of $750.

Appellant then entered his guilty plea. While discussing the plea, the court said, "The Court understands that Mr. Strowenjans wishes to appeal [the ruling on appellant's motion to suppress]. Is that correct?" Counsel answered that the court's understanding was correct. The court then said, "I believe that there is a plea bargain in the case which asks the Court to assess a probated sentence and a fine of $750, but there's no agreement as to whether that probation should be deferred or regular probation." Neither the State nor appellant discussed the

plea agreement further. However, defense counsel asked appellant, "And was the punishment that you have agreed upon in connection with the plea bargain agreement, and whether you get deferred or regular probation, it doesn't exceed the punishment recommended by the prosecutor and agreed to by you, does it?" Appellant answered that it did not.

Counsel told the court that his client was entering a guilty plea conditioned on his right to appeal "the Fourth Amendment issue." Following the court's acceptance of the plea, defense counsel called appellant to the stand. Appellant testified that his plea was conditioned on the right to appeal the ruling on the motion to suppress.

At the time the court pronounced sentence, it told appellant that it granted permission for his appeal.

The judgment in this case characterized the plea as "open."

## NATURE OF THE PLEA

The majority predicates its discussion of this Court's jurisdiction over the point on the existence or non-existence of a plea bargain as defined by rule 40(b)(1) of the Texas Rules of Appellate Procedure. I agree with the majority to the extent that the "agreement" in this case is a plea bargain in the barest sense of the term.[2] Like the majority, I do not believe that the proviso to rule 40(b)(1) is implicated in determining our jurisdiction. However, I disagree as to the reason the proviso does not apply. Rule 40(b)(1) provides as follows:

> Appeal is perfected in a criminal case by giving timely notice of appeal; except, it is unnecessary to give notice of appeal in death penalty cases. Notice of appeal shall be given in writing filed with the clerk of the trial court. Such notice shall be sufficient if it shows the desire of the defendant to appeal from the judgment or other appealable order; but if the judgment was rendered upon his plea of guilty

2. In its most literal sense, a "plea bargain" is *any* agreement, whether to term of punishment or other conditions, that the parties enter into to induce a party to enter a guilty plea. *See, e.g., Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971) (plea entered in return for dismissal of more serious charges); *Gonzales v. State,* 868 S.W.2d 854, 856 (Tex.App.—Dallas 1993, no pet.) (plea entered in return for State not calling a particular witness).

or nolo contendere pursuant to Article 1.15, Code of Criminal Procedure, *and the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney,* in order to prosecute an appeal for a nonjurisdictional defect or error that occurred prior to entry of the plea the notice shall state that the trial court granted permission to appeal or shall specify that those matters were raised by written motion and ruled on before trial. . . .

TEX.R.APP.P. 40(b)(1). The majority concludes that the proviso of article 40(b)(1) is not implicated because punishment has not yet been assessed when the court defers adjudication of guilt. The majority relies on *Ex parte Hernandez,* 705 S.W.2d 700 (Tex. Crim.App.1986), to support its contention. I believe this reliance is misplaced.

Appellant's right to appeal from an adverse ruling on a pretrial motion is grounded in article 44.01(j) of the code of criminal procedure, which provides as follows:

Nothing in this article is to interfere with the defendant's right to appeal under the procedures of Article 44.02 of this code. The defendant's right to appeal under Article 44.02 may be prosecuted by the defendant where the punishment assessed is in accordance with Subsection (a), Section 3d, Article 42.12 of this code, as well as any other punishment assessed in compliance with Article 44.02 of this code.

TEX.CODE CRIM.PROC.ANN. art. 44.01(j) (Vernon Supp.1995). This Court has held that article 44.01(j) did not confer a right to appeal from orders deferring adjudication since the statute refers to "punishment," while probation is not punishment. *See Dillehey v. State,* 788 S.W.2d 154, 155 (Tex.App.—Dallas 1990), *rev'd,* 815 S.W.2d 623 (Tex.Crim.App. 1991). The Court of Criminal Appeals rejected this reasoning, holding that the clear

legislative intent of article 44.01(j) was to give a right to appeal from orders deferring adjudication. *Dillehey v. State,* 815 S.W.2d 623, 626 (Tex.Crim.App.1991).[3] I conclude that, since the statute refers to *punishment* being assessed in accordance with section 5(a) of article 42.12,[4] the legislature necessarily intended that an order deferring adjudication be given the procedural effect of sentence being pronounced. As a result, I believe that *Ex parte Hernandez* has, in effect, been overruled.

Nonetheless, I agree with the majority's conclusion that the proviso of rule 40(b)(1) has no application in this case. Even if probation *is* punishment for purposes of appeals from orders deferring adjudication, the parties in this case never agreed on the length of confinement or the length of probation. Rather, they only agreed that appellant would receive probation in some form, whether by deferred adjudication or by "straight" probation. They never agreed on the nature of the probation, the term of confinement or the length of the probationary term. This left the trial court free to impose whatever term of confinement and/or probationary term it saw fit, within the range allowable by law.

The purpose of the proviso to rule 40(b)(1) is to allow appeals on nonjurisdictional matters in cases involving guilty pleas, thus encouraging guilty pleas. *See Lyon v. State,* 872 S.W.2d 732, 735 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2684, 129 L.Ed.2d 816 (1994). However, in return for the right to appeal certain nonjurisdictional matters, there must be no remaining issues between the parties other than those nonjurisdictional matters. *See Morgan v. State,* 688 S.W.2d 504, 507 (Tex.Crim.App.1985). When the parties have not agreed as to the form of probation, the term of confinement (if "straight" probation is given) or the term of probation, there remain issues between

---

**3.** This Court has held that the right to appeal from an order deferring adjudication is limited to adverse rulings on pretrial motions. *See Carreon v. State,* 885 S.W.2d 188, 189 (Tex.App.—Dallas 1994, no pet.). In this case, appellant challenges just such a ruling.

**4.** The statute refers to section 3d(a) of article 42.12. Article 42.12 was amended in 1989, re-

numbering this provision. Act of May 28, 1989, 71st Leg., R.S., ch. 785, 1989 Tex.Gen.Laws 3471, 3500. We will refer to the statute in its current form. *See* TEX.GOV'T CODE ANN. § 311.027 (Vernon Supp.1995) (reference to any portion of a statute or rule applies to all reenactments, revisions, or amendments of the statute or rule).

the parties. Moreover, an appellant has the burden of showing a plea bargain within the contemplation of rule 40(b)(1) in order to invoke the right to appeal. *Cf. Padgett v. State,* 764 S.W.2d 239, 240 (Tex.Crim.App. 1989); *Galitz v. State,* 617 S.W.2d 949, 951 (Tex.Crim.App.1981) (decided under proviso to article 44.02, predecessor to rule 40(b)(1)).

In this case, the record shows only a partial agreement as to punishment. The parties did not agree as to the length of either the confinement or the probationary term, or even the form of probation. Although there may have been some agreement between the parties as to these issues, the agreement does not appear in our record. This was an "open plea," not a plea bargain, for purposes of rule 40(b)(1). *See Ex parte Patterson,* 726 S.W.2d 146, 148 (Tex.Crim.App.1987). Because this was an open plea, the proviso of rule 40(b)(1) has no application in this case.

## CONDITIONAL GUILTY PLEAS

Generally, an open plea of guilty waives all nonjurisdictional error. *See Helms v. State,* 484 S.W.2d 925, 927 (Tex.Crim.App.1972). However, this rule is predicated on the entry of a knowing and voluntary plea. *Shallhorn v. State,* 732 S.W.2d 636, 639 (Tex.Crim.App. 1987). If an open plea is entered on the mistaken understanding that the merits of a pretrial motion may be raised on appeal, the plea is not entered knowingly and voluntarily. *Christal v. State,* 692 S.W.2d 656, 659 (Tex.Crim.App.1985) (op. on reh'g). Our satisfying the condition on which appellant based his plea by simply reviewing the merits of his pretrial motion to suppress is foreclosed by prior case law.

The court of criminal appeals has held that, when an appellant enters his guilty plea because of a mistaken understanding as to the appealability of the ruling on a motion to suppress, an appellate court may not address the motion to suppress in the interests of justice. *See Broddus v. State,* 693 S.W.2d 459, 461 (Tex.Crim.App.1985). Under *Broddus,* our only choice is to reverse and remand. However, I have reservations about the soundness of the holding in *Broddus.*

*Broddus* has been criticized by the Fourteenth Court of Appeals as improperly limiting the reviewing court's power. *See Jackson v. State,* 841 S.W.2d 38, 40 (Tex.App.— Houston [14th Dist.] 1992, no pet.) ("The holding in *Broddus* creates an absurdity in the law."). As the Fourteenth Court says:

This result makes no sense. If this record shows that somehow appellant's plea was conditional because of an erroneous belief he could appeal, then it is even more clear that his goal was to have that appeal heard. The court of criminal appeals should not restrict our ability to give the appellant what he truly wanted in the first place. If this court must find a plea conditional, we should have the opportunity to then look at the appeal on the merits and dispose of the matter once and for all. Otherwise, this appeal is destined to stay in appellate orbit for some time to come.

*Id.* I agree with the Fourteenth Court that *Broddus* represents bad policy. However, my disagreement with the court in *Broddus* extends to its legal analysis as well.

*Broddus* addresses an issue of simple waiver as if it constituted a jurisdictional bar to appellate review of a point of error. However, a *Helms* waiver presents no jurisdictional bar; the matter involved is only one of appellate restraint. *See Galitz v. State,* 617 S.W.2d 949, 952 (Tex.Crim.App.1981). "Appellate restraint" is simply a matter of the policy of an appellate court not reviewing points that are waived on appeal. The reason for the distinction between waiver and jurisdiction is simple: waiver generally arises from caselaw or rules promulgated by the judiciary. *See, e.g.,* TEX.R.APP.P. 52(a); TEX. R.CRIM.EVID. 103(a). The judiciary can neither create nor limit its own jurisdiction. Jurisdiction can be created or limited only by the constitution or by statute. *Cf. Lyon v. State,* 872 S.W.2d 732, 738 (Tex.Crim.App. 1994) (Clinton, J., dissenting); *Jones v. State,* 796 S.W.2d 183, 186 (Tex.Crim.App.1990) (failure to comply with 40(b)(1) may constitute a failure to preserve error, but not because the appellate court lacks jurisdiction). By treating a simple waiver issue as if it were a jurisdictional bar, the court in *Broddus* ignores that waiver is simply a matter of policy. I believe that *Broddus* was incorrectly decided, both as legal doctrine

151

and as policy. Under the constitution and the statutes establishing this Court's jurisdiction, it has the power, and it should have the discretion, to address appellant's point in the interest of justice.

Notwithstanding my disagreement with *Broddus,* its holding controls the outcome in this case. Appellant's plea was conditioned on the incorrect assumption that he could appeal the ruling on his motion to suppress; as a result, the plea was involuntary. In addition, this issue may be raised by an appellate court on its own motion. *See Christal v. State,* 692 S.W.2d at 656, fn. 2; *Davila v. State,* 767 S.W.2d 205, 206 (Tex. App.—Corpus Christi 1989, no pet.). As a result, I believe, like the majority, that the case must be reversed and remanded for a new trial. However, because I disagree with the majority's reaching the merits of the point, I concur only in the judgment.