

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0252-20 & PD-0253-20

**JERRY WILTZ, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**WALKER, J., filed a dissenting opinion.**

### <u>DISSENTING OPINION</u>

In his petition for discretionary review, Appellant argues that the court of appeals erred in holding that he abandoned his cell phone by fleeing the scene of a traffic stop and thus lacked standing to challenge the warrantless search of his cell phone and its contents. This Court has yet to determine the parameters in which a person's actions constitute intentional abandonment of his cell phone for purposes of the Fourth Amendment. Given the importance of this rapidly evolving issue to Fourth Amendment jurisprudence, I believe this Court should grant review to decide whether the evidence in this case establishes that Appellant intentionally abandoned his cell phone and the contents within it. In the absence of full review, I cannot agree with the court of appeals

that Appellant evinced an intent to abandon his cell phone and its contents merely by fleeing the scene. Therefore, I respectfully dissent from the Court's denial of Appellant's petition for discretionary review.

## I — Background

While on beat patrol at about 4 a.m. June 15, 2016, Harris County Sheriff's Deputy Jose Castellanos initiated a traffic stop of a Chevy Tahoe for failure to stop at a designated point. Appellant, the driver, pulled into a public parking lot and stopped without parking in a parking space. Castellanos approached the vehicle and detected the smell of marijuana, at which point he asked Appellant to exit the vehicle so he could handcuff and detain him. Castellanos then attempted to detain the passenger in Appellant's vehicle but was instead led on a foot chase when the passenger fled. As Castellanos took off after the passenger, Appellant—hands cuffed—ran from the parking lot.

After a short pursuit, Castellanos apprehended the passenger, who had a gun. Castellanos returned to the vehicle to discover Appellant was gone. After putting the passenger in his patrol car, Castellanos began to inventory Appellant's vehicle.

Castellanos recovered a gun, marijuana, and a cell phone located next to the driver's seat. Castellanos also recovered drug paraphernalia and sex toys, all of which were new and in the original packaging. Castellanos proceeded to look through the contents of the cell phone. As he did so, Castellanos opened text messages, emails, and the settings application. Searching the phone, Castellanos found Appellant's name along with the address of a sex shop that had recently been robbed. Castellanos entered Appellant's name into a reporting system, which led him to positively identify Appellant.

Ultimately, police determined the unused, packaged items in Appellant's vehicle were stolen from one of two sex shops where employees had been robbed at gunpoint. Appellant—a former employee of the adult store chain—was indicted for aggravated robbery of two retail stores.

Appellant filed a pre-trial motion to suppress all evidence from the cell phone. The trial court agreed that the warrantless search of the cell phone could not be justified as a search incident to arrest or an inventory search. However, the trial court determined that Appellant had abandoned his cell phone and thus lacked standing to challenge the search. As trial neared, Appellant asked the trial court to reconsider its suppression ruling and argued that the abandonment doctrine did not apply because Appellant did not intentionally abandon his cell phone.[1] Following a hearing on Appellant's motion to reconsider, the trial court once again ruled that the abandonment doctrine applied to the warrantless search of the cell phone and denied his motion. A jury found Appellant guilty of aggravated robbery of both of the sex shops, and a judge sentenced him to ten years on each count to be served concurrently.

On appeal, Appellant challenged the trial court's denial of his motion to suppress. In addition to arguing that he did not intentionally abandon his cell phone, Appellant contended that the abandonment doctrine could not apply as an exception to a warrantless search of a cell phone based on the United States Supreme Court decision in *Riley v. California*, 573 U.S. 373 (2014). The court of appeals rejected Appellant's arguments, determined that the abandonment doctrine did apply to the cell phone, and affirmed Appellant's convictions. *Wiltz v. State*, 595 S.W.3d 930, 936 (Tex. App.—Houston [14th Dist.] 2020).

---

[1] At the time Appellant filed his motion to suppress in November 2017, the State had not yet obtained a search warrant for the cell phone. In April 2018, about a month before the motion to suppress hearing, the State obtained a search warrant to forensically examine the cell phone. Subsequently, in July 2018, Appellant filed a motion to reconsider the motion to suppress.

## II — Abandonment Doctrine

A person has no reasonable expectation of privacy in property he abandons. *Matthews v. State*, 431 S.W.3d 596, 608 (Tex. Crim. App. 2014). Once a defendant voluntarily and intentionally abandons property, he no longer has standing to challenge the reasonableness of the search of the abandoned property. *Id.* at 608-09. Rather than being determined in the strict property-right sense, the issue centers on whether the person relinquished his or her interest in the property so that he or she could no longer retain a reasonable expectation of privacy with regard to the property at the time of the search. *State v. Martinez*, 570 S.W.3d 278, 286 (Tex. Crim. App. 2019) (citing *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997)).

Abandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances. *Id.* "[A]bandonment consists of two components: 1) a defendant must intend to abandon property, and 2) a defendant must freely decide to abandon the property."[2] *Comer v. State*, 754 S.W.2d 656, 659 (Tex. Crim. App. 1986) (op. on reh'g). The abandonment "test does not begin with a presumption of abandonment which must be rebutted by proof of an intent not to abandon." *Martinez*, 570 S.W.3d at 286. Instead, affirmative proof of abandonment is required. *Id.*

## III — The evidence fails to show that Appellant intentionally abandoned his cell phone.

While this Court has recognized that the abandonment doctrine may apply as an exception to the warrantless search of a cell phone, *State v. Granville*, 423 S.W.3d 399, 409 (Tex. Crim. App. 2014), we have not specified the parameters in which a person's actions equate to intentional abandonment of a cell phone for purposes of the Fourth Amendment.

---

[2] A person does not voluntarily abandon his cell phone if his relinquishment is the result of police misconduct. *Comer*, 754 S.W.2d at 658-59. Because there is no evidence of police misconduct in this case, the abandonment inquiry is one of intent.

In concluding that Appellant intentionally abandoned his vehicle and cell phone, the court of appeals noted that "[t]he video shows appellant fleeing from the vehicle on foot after having been handcuffed, passing by the wide-open door, leaving behind his vehicle and everything in it, including the cell phone." *Wiltz*, 595 S.W.3d at 935. While I agree that Appellant abandoned his vehicle when he fled,[3] the same evidence, without more, does not demonstrate that Appellant intended to abandon his cell phone and the information within it.

It is apparent that when Appellant fled, he knew his vehicle would be left behind and chose to run anyway. Appellant did not return to his vehicle. By intentionally leaving his unparked vehicle in a public parking lot, Appellant abandoned the vehicle "in such a way 'that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.'" *Matthews*, 431 S.W.3d at 609 (quoting *McDuff*, 939 S.W.2d at 616). If the question was whether Appellant had standing to challenge the search of his vehicle, I would hold that he did not.

But what is not apparent from the record is whether Appellant knew the cell phone was in his vehicle when he ran or whether he made a conscious decision to leave it behind. Based on the facts before us, it would be speculative to conclude that Appellant knew his phone was in his vehicle and intentionally left it behind when he fled just as it would be speculative to conclude that he believed it was in his pocket when he ran. The record also is silent as to whether Appellant was in possession or control of his cell phone at the time of the stop. As the Appellant suggested to the trial court, it is possible that the passenger was using the phone and had control over it when the traffic stop occurred. Again, reaching that conclusion would be speculative just as concluding that Appellant was in control of his phone at the time of the stop would be speculative. There is no evidence that would lead to an inference that Appellant intentionally abandoned the phone.

---

[3] *See Matthews*, 431 S.W.3d at 610 (concluding that the defendant intentionally abandoned a borrowed vehicle when he fled from the police).

Both the trial court and the court of appeals found *Edwards v. State*, 497 S.W.3d 147 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) instructive on the issue of whether Appellant abandoned his cell phone for purposes of the Fourth Amendment. Although the court of appeals in *Edwards* did hold that the defendant in that case abandoned his cell phone, the case is distinguishable in several respects.

In *Edwards*, the defendant left his phone out in the open on top of a stolen vehicle he and his co-defendants used as transportation to a game room where they attempted an armed robbery. *Id.* at 154. Based on the facts available, it appears that Edwards left his cell phone on top of the stolen vehicle *before* he approached the game room and got into a confrontation with the security guard, which led to a shootout between the defendants and the security guard. *Id.* at 151–54. Eventually, Edwards took off running without going back for his cell phone. *Id.* at 152.

There was an abundance of evidence that Edwards intentionally abandoned his cell phone when he left it on top of the stolen vehicle out in the open before he attempted an armed robbery and fled from the scene without going back for his cell phone. Based on these facts, it is clear that Edwards relinquished any reasonable expectation of privacy with regard to his cell phone.

The facts of Appellant's case differ substantially. The one similarity is that both Edwards and Appellant fled from the scene. But while in *Edwards* there is affirmative evidence [4] to infer that he knew he would be leaving his cell phone behind when he fled, the same cannot be said in Appellant's case.

In *Edwards*, the appellant placed his cell phone on top of a stolen car and then walked away to commit a crime. Edwards's act of getting out of a stolen vehicle and proceeding to the game room lobby without his cell phone provided some affirmative evidence that Edwards intended to

---

[4] *See Martinez*, 570 S.W.3d at 286 (explaining that "the test for abandonment in the Fourth Amendment context requires affirmative proof of abandonment").

leave his cell phone behind. In Appellant's case, there is no evidence that Appellant had the intent to leave the cell phone behind. There is no evidence to even infer that Appellant thought about whether he had the time or ability to retrieve the phone while having his hands cuffed behind his back. Immediately after Castellanos took off after Appellant's passenger, Appellant—who was handcuffed and could not have accessed his cell phone even if he knew it was there—ran. Not only is there no affirmative evidence that Appellant formed the intent to abandon his cell phone, the record facts would lead to a logical conclusion that it was extremely unlikely that he did so.

Further, in *Edwards* police found a handprint located on the vehicle near the cell phone that matched Edwards's handprint. *Edwards*, 497 S.W.3d at 158, n. 14. Unlike in Appellant's case, this provided some evidence to infer that Edwards placed his phone on top of the car and therefore knew he was leaving his cell phone behind. The fact that Edwards left his cell phone out in the open and on top of a vehicle that did not belong to him or his co-defendants can also lead to an inference that Edwards intended to abandon the cell phone at the time he placed it on top of the car. *See Martinez*, 570 S.W.3d at 287 (explaining that "[n]ot only will privacy expectations vary with the type of property involved ... but they will vary with the location of the property") (quoting *United States v. Oswald*, 783 F.2d 663, 666–67 (6th Cir. 1986)). Conversely, in Appellant's case, the cell phone was recovered from the *inside* of *Appellant's* vehicle. For purposes of privacy expectations, a person leaving his cell phone inside of his own vehicle is much different than a person leaving his cell phone out in the open and on top of a stolen vehicle to go commit a robbery. Unlike the present case, consideration of where Edwards left his cell phone is additional affirmative evidence of his intent to abandon his cell phone.

Absent a showing of any affirmative evidence of Appellant's intent to abandon his cell phone, I cannot agree that Appellant did not have any reasonable expectation of privacy regarding

his cell phone and would hold that he did have standing to challenge the warrantless search of his cell phone.

### IV — The evidence fails to show that Appellant intentionally abandoned the contents of his cell phone.

Even if evidence existed that could lead to an inference that Appellant had intentionally abandoned his cell phone by fleeing, there is no evidence that he intentionally abandoned the information contained in his cell phone. There is a distinction between the privacy interests of a cell phone as a physical object and the digital contents stored on a cell phone. This Court recognized as much in *Granville* when we concluded police were permitted to inspect the physical aspects of appellant's cell phone in police custody but were required to obtain a warrant to search the contents of the phone. *Granville*, 423 S.W.3d at 416; *Id.* at 426 (Keller, P.J., concurring).

In *Granville*, the defendant challenged the search of his cell phone seized while being booked in jail. Shortly after Granville, a high school student, was booked, a school resource officer was told that Granville had taken an inappropriate picture of another student in the boys' bathroom. The officer went to the jail, retrieved Granville's cell phone from the property room, and looked through it until he found the photograph. *Id.* at 402. In rejecting the State's argument that Granville did not have a reasonable expectation of privacy in any property in the custody of jail officials, this Court distinguished the expectation of privacy in physical objects such as clothing from the expectation of privacy in cell phones:

> [C]lothing does not contain private banking or medical information and records; it does not contain highly personal emails, texts, photographs, videos, or access to a wide variety of other data about the individual citizen, his friends and family. Searching a person's cell phone is like searching his home desk, computer, bank vault, and medicine cabinet all at once.

*Id.* at 415. *See also Riley*, 573 U.S. at 396 ("Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house[.]").

In *Riley*, the Supreme Court held a warrant was required to search a cell phone seized incident to an arrest given the "quantitative and qualitative" differences between a cell phone and other objects. *Id.* at 393, 403. In so holding, the Court rejected the Government's argument that information stored by cell phones is "materially indistinguishable" from searches of other physical items that police are authorized to search incident to an arrest such as wallets, purses, and other containers. *Id.* at 393. In the Court's view, the Government's argument was "like saying a ride on horseback is materially indistinguishable from a flight to the moon." *Id.*

Nor was the Supreme Court persuaded by the Government's proposed rule that police be permitted to conduct a limited search of a cell phone seized incident to an arrest "where an officer reasonably believes that information relevant to the crime, the arrestee's identity, or officer safety will be discovered." *Id.* at 399. The Supreme Court declined to hold as much based on the plethora of information that would be swept up by such a rule and the inability for police to "discern in advance what information would be found where." *Id.*

The Court also was unpersuaded by the Government's suggestion that a search of a cell phone call log always be authorized. *Id.* at 400. In refusing to adopt such a rule, the Supreme Court explained that "call logs typically contain more than just phone numbers; they include any identifying information that an individual might add, such as the label 'my house' in [this] case." *Id.*

Although *Riley* involved the search incident to arrest doctrine rather than the abandonment doctrine, the same privacy interests and governmental intrusion concerns expressed by the Supreme Court apply to the contents of the cell phone in this case. While Castellanos may not have done an extensive search of Appellant's cell phone, the *Riley* Court made clear that any warrantless search of a defendant's cell phone, however minimal, is unreasonable absent express exigent circumstances such as a concern for the safety of officers or others. *Id.* at 388, 399-400.

Given the heightened privacy interests associated with the information within a cell phone as distinct from the privacy interests associated with a cell phone as a physical object and the lack of any evidence that Appellant intentionally abandoned the contents of his cell phone, I would hold that Appellant maintained a reasonable expectation of privacy in the contents of the cell phone and thus had standing to challenge Castellanos's warrantless search of the cell phone.

## V – Conclusion

Application of Fourth Amendment principles to cell phones is an evolving area of constitutional law that warrants further development. Both this Court and the Supreme Court have recognized a person's distinct privacy interests in his cell phone. Granting review in this case would give the Court an opportunity to address the abandonment doctrine's application to cell phones and the vast amount of information stored on them. Without review, I cannot conclude that the evidence in this case establishes that Appellant abandoned either his cell phone or the contents within it, thereby losing any reasonable expectation of privacy regarding his cell phone and its contents. Therefore, I respectfully dissent from the Court's refusal to grant review.

FILED: October 21, 2020
PUBLISH