Jeffrey M. **VIVEROS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13-90-073-CR.

Court of Appeals of Texas,
Corpus Christi.

Oct. 31, 1990.

Discretionary Review Granted
Feb. 20, 1991.

Joel B. Johnson, Joseph & Johnson, P.C., Sinton, for appellant.

Thomas L. Bridges, Dist. Atty's. Office, Sinton, for appellee.

Before NYE, C.J. and KEYS and DORSEY, JJ.

## OPINION

KEYS, Justice.

Pursuant to a plea bargain, appellant pleaded guilty to possession of cocaine. Punishment was assessed at ten years in prison, probated for seven years, and a $2500.00 fine. We reverse the judgment and remand the cause to the trial court.

Appellant was driving about sixty-five miles per hour in a sixty-five mile per hour speed zone down I–37 towards Corpus Christi, Texas, at 12:30 a.m. He passed a black and white Department of Public Safety Mustang which was patrolling slowly in the right lane. Not knowing whether the speed limit was fifty-five or sixty-five miles per hour, appellant slowed to the speed of forty-five to fifty miles per hour upon overtaking the black and white Mustang. He maintained this speed without weaving or violating any traffic laws. Officers Lober-

au and Kelley accelerated their Mustang and followed three to four car lengths behind appellant. They called in to determine whether appellant's vehicle was stolen and discovered it was not. Nevertheless, they stopped appellant. Officer Loberau asked to see appellant's drivers license and evidence of insurance. When he looked inside the vehicle, Loberau thought he saw a marijuana cigarette in the ash tray. He requested permission to search appellant's vehicle, and searched it. They found cocaine, marijuana, and other illegal drugs. Appellant was arrested.

By his first two points of error, appellant contends that the investigatory stop was unjustified because the officers lacked sufficient specific articulable facts that appellant was involved in criminal conduct. He contends that evidence concerning the drugs found in the car should have been suppressed. We agree and reverse.

A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied. *Michigan Dept. of State Police v. Sitz,* —— U.S. ——, ——; 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). Stops by roving patrols are considered Fourth Amendment seizures. *See e.g., Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979). This stop was an intentional termination of freedom of movement by the State; thus, it was a Fourth Amendment seizure.

Our first inquiry is whether the seizure was reasonable. The constitutionality of a seizure for the purposes of investigation is measured by the reasonable suspicion test and not the probable cause standard set forth in the Constitution. *Id.* at 664, 99 S.Ct. at 1401; *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

For a stop to be legal under the reasonable suspicion standard, there must be some indication or reasonable inference of criminal conduct. *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989); *Hoag v. State,* 728 S.W.2d 375, 380 (Tex. Crim.App.1987). Simply stated, the facts known to the officers were that a car overtook them while they were driving slowly

at night on an interstate highway. The vehicle slowed and maintained a speed comfortably within the limit. The car was not reported stolen. When followed closely the driver did not weave or violate any traffic laws.

When asked why appellant was pulled over, Loberau indicated that he was "real suspicious" and that "something was not right". He stated that usually people slow down when they see a DPS unit, but then they speed up and drive the maximum speed limit. What made this encounter suspicious to the officers was that the driver slowed and did not subsequently accelerate. Loberau testified that they had initiated other "investigatory stops" based on the driving pattern found here. These encounters revealed some intoxicated drivers.

By slowing down when he spotted the DPS unit and thereafter driving well within the speed limit, appellant did not create a reasonable suspicion that he was involved in a crime. Without a reasonable suspicion that appellant is linked to a crime, the DPS officers had no authority to seize appellant. *Delaware v. Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401.

The Court of Criminal Appeals requires a greater quantum of specific articulable facts to initiate an investigatory stop than those present in the instant case. For example, in *Garza,* 771 S.W.2d at 558–59, the police suspected that Albert Garza was "good for" several burglaries. The arresting officer was aware of Garza's description and vehicle. Garza was allegedly a drug addict. The officer spotted Garza and stopped him. The Court of Criminal Appeals held there were insufficient articulable facts linking Garza to any crime. Thus, the stop was illegal and the evidence was suppressed.

Similarly, in *Comer v. State,* 754 S.W.2d 656 (Tex.Crim.App.1986), the police observed two men in a truck parked by a barbecue restaurant in a high crime area. The dome light was on. The men appeared interested in something in the seat between them. When the police drove into the parking lot, the truck pulled out. The police then initiated an investigatory stop. Since

these facts were just as consistent with innocent activity as with criminal activity, the Court held the seizure violated appellant's rights.

In contrast, in *Hoag,* 728 S.W.2d at 380, the Court of Criminal Appeals held there were sufficient specific articulable facts to support an investigatory stop. The officers had good reason to believe Hoag was involved in a burglary two days before he was pulled over. Later, the police observed Hoag apparently attempting to break into several houses. Finally, the police observed Hoag enter an apartment complex, and return with a newspaper and a canned drink. The police checked the apartment complex and did not find a break in. They stopped Hoag anyway and searched his car. The Court of Criminal Appeals held the events leading up to the stop justified the officer's suspicion that Hoag was committing or attempting to commit a crime.

*Comer* is like the instant case because there was no evidence that a crime was involved. The activity in both cases suggested that the subjects did not wish to speak with the police but did not indicate that any crime had been committed. At the best, the police officers possessed only an inarticulate hunch or speculative suspicion of wrongdoing. *Glass v. State,* 681 S.W.2d 599, 601 (Tex.Crim.App.1984). The facts in this case are not sufficient to support a reasonable suspicion of appellant's wrongdoing.

The trial judge erred in not suppressing the evidence. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Baldwin v. State,* 606 S.W.2d 872, 874–75 (Tex.Crim.App.1980). Tex.Code Crim.Proc.Ann. art. 38.23(a) (Vernon 1989). We sustain appellant's first two points of error.

■ By appellant's third point of error, he complains that the trial court erred in admitting evidence of the drugs found in the car because the plain view doctrine does not apply. We agree. The plain view doctrine holds that no search occurs if a party has no subjective expectation of privacy in the product of the search, or if the

expectation of privacy is unreasonable. When an object is exposed to plain view neither of these requirements are met. *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan J., concurring). A predicate to the plain view doctrine is that the officer be lawfully present. Our prior holding establishes that appellant's investigatory stop was illegal; therefore, the plain view doctrine does not apply. *Ebarb v. State*, 598 S.W.2d 842, 844 (Tex.Crim.App.1980). Appellant's third point of error is sustained.

■ By appellant's fourth point of error, he complains that the search was invalid because no consent was given, or consent was the product of the illegal stop. We sustain this point of error.

The general rule is that consent must be voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In *Brick v. State*, 738 S.W.2d 676 (Tex.Crim.App.1987), the Court of Criminal Appeals identified factors in addition to voluntariness that the courts must apply to determine whether consent is valid following an illegal police encounter. *See also Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim.App.1985). If consent is sufficiently attenuated from the illegal stop it will be valid.

A number of the factors the *Brick* Court found important weigh heavily here against finding valid consent. Consent was obtained as a direct result of the illegal stop. Loberau requested consent to search; it was not freely offered by appellee. Loberau failed to notify appellant that any evidence found would be used to convict him, or that he had the right to refuse the search. *Brick* 738 S.W.2d at 680–81. Under these circumstances, we hold that the taint of the illegal stop was not sufficiently attenuated to validate consent. The trial court therefore erred in failing to suppress the evidence.

Judgment of the trial court is reversed and the cause remanded.

NYE, Justice, dissenting.

I respectfully dissent. The issue is whether, based upon the whole picture, Officers Lorberau and Manning, as experienced law enforcement officers, could reasonably surmise that appellant's vehicle was engaged in criminal activity. I find no error in the trial judge's conclusion that Lorberau and Manning had reasonable suspicion to stop appellant's vehicle. The trial judge listened to Lorberau and Manning testify, obviously credited their testimony, and then ruled that they acted on reasonable suspicion. This Court rarely interferes in a trial judge's findings concerning witness credibility. In any event, I find nothing to indicate that the officers' testimony is not to be believed or that the officers manufactured the evidence which they said led them to suspect and to stop this vehicle. As I read the majority opinion, it is that the information which the officers had before them, and the reasonable inferences drawn from it, was insufficient, as a matter of law, to permit them to make this stop. Since I find the majority's conclusion contrary to the United States Supreme Court's declaration in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), I must disagree.

This case portrays both the difficulties of patrolling our highways and the skills which law enforcement officers use in enforcing our traffic laws. The evidence shows that at 12:25 or 12:30 a.m., two Department of Public Safety officers, Danny Lorberau and Kelley Manning, were traveling southbound at approximately fifty miles-per-hour on Interstate Highway 37. Appellant's southbound vehicle approached their DPS vehicle very fast. As appellant passed their DPS vehicle, he applied the brakes so hard that the vehicle's front end dipped down and its rear end raised up. Appellant then slowed to forty-five miles-per-hour and maintained that speed for three-quarters of a mile. At that point, Lorberau stopped appellant's vehicle. Lorberau testified that he has "no doubt" that appellant was speeding when he passed their DPS vehicle. Lorberau testified that he also stopped appellant because appellant was driving "so slow", and he wanted to make sure that appellant was

not intoxicated, or that appellant's vehicle was not stolen.

Based on his three years' experience as a DPS patrolman, Lorberau said that appellant's driving pattern was not similar to the way other drivers usually react when they pass a DPS vehicle from the rear. He said that in these situations, people do slow down; however, they will slow down to the actual speed limit and maintain that speed. Lorberau said that he has experience in dealing with the driving behavior which appellant exhibited. He said that "most of the time" this behavior means that the driver is either intoxicated or has been drinking.

Kelley Manning testified that he has been a DPS patrolman for four years. When asked why he and Lorberau stopped appellant's vehicle, Manning replied that in some cases when drivers exhibit the behavior exhibited by the appellant, they are intoxicated.

The Fourth Amendment applies to seizures of the person, including brief investigatory stops of motor vehicles. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–79, 20 L.Ed.2d 889 (1968). Some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity must justify an investigatory stop. *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); *Brignoni-Ponce*, 422 U.S. at 884, 95 S.Ct. at 2581; *Terry*, 392 U.S. at 16–19, 88 S.Ct. at 1877–79.

The totality of the circumstances—the whole picture—must be taken into account in determining what cause is sufficient to authorize police to stop a person. Based upon the whole picture, the detaining officers must have a particularized and objec-

tive basis for suspecting that the particular person stopped is involved in criminal activity. *See, e.g., Brown*, 443 U.S. at 51, 99 S.Ct. at 2640; *Brignoni-Ponce*, 422 U.S. at 884, 95 S.Ct. at 2581.

The United States Supreme Court defined this particularized and objective basis in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The Court said that the notion that an assessment of the whole picture must produce a particularized suspicion contains two elements. First, the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information from police reports (if they are available), and consideration of the modes or patterns of operation of certain kinds of lawbreakers. Second, the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.[1] *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695. In all situations, the detaining officers are entitled to assess the facts in light of their law enforcement experience in detecting illegal activity. *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695; *Brignoni-Ponce*, 422 U.S. at 885, 95 S.Ct. at 2582; *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

The instant case uses all of the principles I just discussed. Specifically, it illustrates how law enforcement officers may use objective facts (which may be meaningless to the untrained eye) and combine them with deductions from these facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion.

Looking at the whole picture, Lorberau and Manning had a particularized and objective basis for suspecting appellant of some type of criminal activity. Appellant's vehicle approached theirs from the rear, exceeding the speed limit. Upon passing

---

1. In *Cortez*, Chief Justice Burger points out that "[f]rom these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.

The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense

conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695.

them, it braked hard and maintained a steady below the speed limit forty-five mile-per-hour pace. Lorberau knew that appellant's driving pattern did not comport with the driving patterns of other drivers. Lorberau and Manning testified that based on their past experience as officers of the law, appellant's behavior raised a suspicion that appellant was engaged in wrongdoing.

Our Court of Criminal Appeals has approved an investigatory stop based upon lesser facts than those present in the instant case. *See Greer v. State*, 544 S.W.2d 125 (Tex.Crim.App.1976). In *Greer*, a patrolman received a broadcast that a described Continental was "possibly D.W.I." and had been seen going the wrong way on a one-way street. A later broadcast informed him that the vehicle had turned onto Eighth Street. The patrolman observed a large car on Eighth Street, there being no other traffic. He observed that the car met the description given and noted that the Continental was traveling from four to seven miles-per-hour. He followed the car for several blocks but did not see any traffic violations. The patrolman observed that from the information he received concerning where the car had been and from the turns the vehicle made, the driver was driving in a "kind of square." Noting the out of county license plates and given the early morning hours, he concluded the driver could be lost and made an investigatory stop. The Court of Criminal Appeals held that the stop was justified.

The limited purpose of the stop in the instant case was to determine appellant's sobriety and whether appellant's car was stolen. The intrusion upon appellant's privacy associated with this stop was limited and was "reasonably related in scope to the justification for [its] initiation." *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884. The majority says that the stop was based upon an "inarticulate hunch" or "speculative suspicion of wrongdoing." I would call it responsible police work.

I would affirm the trial court's judgment.