In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00090-CR


______________________________




LAJONTE JAMES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 98F0381-202




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Lajonte James pleaded guilty, as part of a plea bargaining agreement, to possession of cocaine
in an amount greater than or equal to four grams, but less than 200 grams. The trial court sentenced
James to five years' confinement, as called for in the plea bargaining agreement. James contends the
trial court erred in overruling his motion to suppress evidence of the cocaine.

 Initially, we must determine whether we have jurisdiction of this appeal. If an appeal is from
a judgment rendered on the defendant's plea of guilty under Tex. Code Crim. Proc. Ann. art. 1.15
(Vernon Supp. 2001), and the punishment assessed did not exceed the punishment recommended
by the prosecutor and agreed to by the defendant, the appellant's notice of appeal must specify: (1)
that the appeal concerns a jurisdictional defect, (2) that the substance of the appeal was raised by
written motion and ruled on before trial, or (3) that the trial court granted the appellant permission
to appeal. Tex. R. App. P. 25.2(b)(3). A notice of appeal that does not conform to Rule 25.2(b)(3)
deprives this Court of jurisdiction to consider the appeal on its merits. See Jones v. State, 796
S.W.2d 183, 186 (Tex. Crim. App. 1990).

 The record shows that when James entered his guilty plea, the trial court acknowledged that
James was "reserving the right to appeal the Court's ruling on a motion to suppress." In addition,
in the papers filed with the plea bargaining agreement, a handwritten notation recites, "Defendant
reserves right to appeal motion to suppress . . . ." Finally, an entry in the trial court's docket sheet
notes that the defendant "pled guilty . . . with right to appeal ct's ruling on m/suppress." However,
James' notice of appeal does not "specify that the substance of the appeal was raised by written
motion and ruled on before trial," as Rule 25.2(b)(3)(B) requires.

 In Jones v. State, 796 S.W.2d at 183, a defendant who had pleaded guilty as part of a plea
bargaining agreement filed a general notice of appeal and, after the State pointed out the
jurisdictional defect, the defendant filed an amended notice of appeal. Id. at 185. The Texas Court
of Criminal Appeals held that Rule 40(b)(1), the precursor to Rule 25.2, is a restrictive rule
regulating the extent of the grounds on which a defendant may appeal. The court held that
compliance with Rule 40(b)(1) is necessary for a defendant to avoid the statutory restrictions on his
right to appeal. Therefore, in that case, the appellant's general notice of appeal was insufficient to
confer jurisdiction on the court of appeals. 

 However, in Riley v. State, 825 S.W.2d 699, 701 (Tex. Crim. App. 1992), the Court of
Criminal Appeals recognized an exception to the strict application of Rule 40(b)(1). In Riley v.
State, the appellant filed a general notice of appeal, but the record also contained an order from the
trial court granting the appellant permission to appeal and stating that a suppression motion was
raised before trial. The Court of Criminal Appeals held the trial court's order combined with the
timely filed notice of appeal was sufficient to confer jurisdiction on the court of appeals to consider
nonjurisdictional defects recited in the order. 

 Even after Jones and Riley, courts of appeals have differed concerning whether substantial
compliance with Rule 25.2(b)(3) is sufficient to confer jurisdiction. In Sherman v. State, 12 S.W.3d
489, 492 (Tex. App.Dallas 1999, no pet.), the court of appeals held that compliance with both the
form and the substance of the rule is required in order to properly invoke the court of appeals'
jurisdiction. That case is not exactly on point, however, because the issue there was whether the
record substantiated the appellant's statements in his notice of appeal that he had met the
jurisdictional requirements. 

 Other courts have recognized that substantial compliance with Rule 25.2(b)(3), as
demonstrated by the overall record, may confer jurisdiction. In Finch v. State, No. 02-00-414-CR,
2001 WL 253441, at *3 (Tex. App.-Fort Worth Mar. 15, 2001, no pet. h.), the court found
substantial compliance where the defendant's reservation of his right to appeal rulings on his pretrial
motions appeared in several places in the clerk's record, e.g., the written plea admonishments, the
plea bargaining agreement, the trial court's certificate of proceedings, and the judgment. In Johnson
v. State, 47 S.W.3d 701, 704 (Tex. App.-Houston [14th Dist.] 2001, no pet. h.), the court found
substantial compliance where the judgment and the docket sheet both contained notations indicating
that the defendant was appealing the trial court's ruling on his motion to suppress. In Miller v. State,
11 S.W.3d 345, 347 (Tex. App.Houston [14th Dist.] 1999, pet. ref'd), and Gomes v. State, 9 S.W.3d
170, 171-72 (Tex. App.Houston [14th Dist.] 1999, no pet.), courts found substantial compliance
from (1) a handwritten notation on the general notice of appeal, which was signed by the trial judge,
(2) an entry on the trial court's docket sheets, and (3) in Gomes, a notation on the judgment, or (4)
in Miller, the trial court's statement on the record, all of which indicated that the appellants were
appealing the trial courts' rulings on their motions to suppress.

 Our case is more like those cases in which courts have found substantial compliance. As in
Johnson, Miller, and Gomes, the docket sheet contains an entry evidencing James' desire to appeal
the trial court's ruling on his motion to suppress. As in Finch, the plea bargaining agreement also
shows James' reservation of his right to appeal. Further, the trial court stated on the record that
James was pleading guilty but reserving his right to appeal the trial court's ruling on his motion to
suppress.

 Brunswick v. State, 931 S.W.2d 9 (Tex. App.-Houston [1st Dist.] 1996, no pet.), is
distinguishable because, in the present case, James filed a written notice of appeal, whereas in
Brunswick the appellant did not. Glenn v. State, 991 S.W.2d 285 (Tex. App.-Houston [1st Dist.]
1997, no pet.), overruled on other grounds, State v. Riewe, 13 S.W.3d 408 (Tex. Crim. App. 2000),
is also distinguishable because there was no order or any other document in the record reciting the
information required by the appellate rule. Glenn v. State, 991 S.W.2d at 288. The court cited Diaz
v. State, 877 S.W.2d 452, 453 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd), as an illustration of
what might have constituted substantial compliance, i.e., a recitation in the plea bargaining
agreement. Here the plea bargaining agreement does indicate James' desire to appeal the trial court's
ruling on his motion to suppress. Consequently, we conclude we have jurisdiction of this appeal.

 At the suppression hearing, Officer Robert McCarver testified that he was conducting
surveillance at 2141 South Akin in Texarkana, where he had been informed a shipment of cocaine
would be delivered. He testified he saw James drive up to the house, get out of his car, leave the
motor running, enter the house, and moments later emerge and drive away. He also testified he
noticed that James did not have license plates displayed on his vehicle. 

 McCarver testified he followed James and called for a uniformed police officer to stop James'
car. He testified that before the uniformed officer arrived, James pulled into the yard at 708
Lumpkin Street, stopped, and got out of his car. McCarver said the Lumpkin Street home was also
a suspected narcotics "stash house." He testified he approached James in the yard of the Lumpkin
Street home. Scott Sartor, the uniformed police officer, arrived a short time later. On appeal, James
contends that the officers "blocked" his car in the driveway, but the only evidence is that the officers
pulled up behind James' car. There is no evidence that the officers exerted any force or took any
action to detain James or prevent him from leaving.

 McCarver testified that he asked James what his business was at the Akin Street home. He
testified that James told him he had relatives living there. McCarver also testified that he confronted
James with his suspicions that the Akin Street home was being used for narcotics trafficking and
asked him whether he was involved in that. He testified that James denied he was involved in any
narcotics activity at all. 

 McCarver testified that James told him he lived at the Lumpkin Street home with his
girlfriend. McCarver and Sartor both testified that McCarver asked for and received James' verbal
permission to search the Lumpkin Street home. They testified that they did not coerce or try to
persuade James to let them search the house. McCarver characterized his conversation with James
as cordial; Sartor characterized it as casual. 

 Both officers testified that they entered the house through the front door using James' key,
though on cross-examination Sartor admitted he could not recall whether they entered the house
through the back door. Sartor found the cocaine inside a decorative metal tin on the mantel in the
living room. Also inside the tin the officers found two receipts in James' name. McCarver also
testified that some of James' clothes were in the house. 

 James denied that he lived at the Lumpkin Street home, but testified that he lived at the Akin
Street home with his mother. He admitted, however, that the Lumpkin Street home was his
girlfriend's residence and that he sometimes stayed there. He also admitted that there was a basket
of his clothes at the Lumpkin Street home. 

 James testified that on the morning he was arrested, he "left his house" and stopped at the
Akin Street home to pick up some of his mail. He testified he stayed at the Akin Street address
twenty to twenty-five minutes. He then drove over to the Lumpkin Street home to get some fuses
for his car that he testified were "in my garage, in my other car."

 James said that as he pulled up to the Lumpkin Street home, McCarver pulled in behind him,
got out of his truck, and demanded that James get out of his vehicle. He also testified he saw several
other police cars around his house. He testified that McCarver searched him, searched his car, and
then placed him in handcuffs. He also testified that McCarver asked for his consent to search the
house, but that he told McCarver he could not give consent because it was not his house. 

 James testified that McCarver took his keys, that they went to the front door but found the
screen door locked, and that they then went to the back and entered through the back door using his
key. He testified that it was McCarver who opened the door using his key. He also testified that
several other police officers entered the house. 

 At a suppression hearing, the trial court is the exclusive trier of fact and judge of the
credibility of the witnesses and the weight of their testimony. Green v. State, 934 S.W.2d 92, 98
(Tex. Crim. App. 1996). Therefore, an appellate court must view the evidence in the record and
draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Further, the appellate court must
sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory
of law applicable to the case. Id.; Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

 The general rule is that we must afford almost total deference to the trial court's
determination of the historical facts that the record supports, especially when the trial court's fact
findings are based on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997). We are also to afford such deference to a trial court's ruling on the 
application of law to fact questions if the resolution of those ultimate questions turns on an
evaluation of credibility and demeanor. We may review de novo the application of law to fact
questions not turning on credibility and demeanor.

 Under the Fourth and Fourteenth Amendments to the United States Constitution, a search
conducted without a warrant issued with probable cause is per se unreasonable. Schneckloth v.
Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854, 858 (1973); McAllister v. State, 34
S.W.3d 346, 350 (Tex. App.-Texarkana 2000, pet. ref'd). Consent to search, however, is one of the
well-established exceptions to the constitutional requirements of both a warrant and probable cause. 
Schneckloth v. Bustamonte, 412 U.S. at 219; Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim.
App. 2000); McAllister v. State, 34 S.W.3d at 350.

 James first contends that McCarver did not in fact obtain his consent to search the Lumpkin
Street home. His position is at variance with his position in the trial court, where he argued that he
could not give consent because he did not live at the Lumpkin Street home. (1) Nevertheless, there is
evidence from which the trial court could have concluded that James did consent, as both McCarver
and Sartor testified positively that James gave his verbal consent to the search. Though James denies
that he gave consent, the trial court was free to find the officers' testimonies more credible. (2)

 James also contends that, if he did give consent, he did not give it voluntarily. The test for
a valid consent to search is whether the consent was voluntary, a question of fact to be determined
from all the circumstances. Schneckloth v. Bustamonte, 412 U.S. at 248-49; Carmouche v. State, 10
S.W.3d at 331; McAllister v. State, 34 S.W.3d at 350. For consent to be voluntary, it must not be
the product of duress or coercion, actual or implied. Schneckloth v. Bustamonte, 412 U.S. at 248-49;
DuBose v. State, 915 S.W.2d 493, 496 (Tex. Crim. App. 1996), overruled on other grounds, Guzman
v. State, 955 S.W.2d at 90; McAllister v. State, 34 S.W.3d at 350. In Texas, the State is required to
prove by clear and convincing evidence that consent was voluntarily given. State v. Ibarra, 953
S.W.2d 242, 243 (Tex. Crim. App. 1997); McAllister v. State, 34 S.W.3d at 350.

 James contends that under the totality of the circumstances, his consent to the search of the
Lumpkin Street home was not voluntary. He cites United States v. Galberth, 846 F.2d 983, 987 (5th
Cir. 1988), as illustrative of the kinds of factors federal courts weigh in determining the voluntariness
of consent. In Galberth, the court outlined six factors: (1) the voluntariness of the defendant's
custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the
defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent;
(5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating
evidence will be found. These factors are similar to those the Texas Court of Criminal Appeals has
approved in determining the voluntariness of consent. See, e.g., Reasor v. State, 12 S.W.3d 813, 818
(Tex. Crim. App. 2000).

 Viewing the suppression hearing record in the light most favorable to the trial court's ruling,
we conclude James' consent to search the Lumpkin Street home was voluntary. McCarver and Sartor
both testified that James was not in custody or otherwise restrained when he gave his consent to the
search. McCarver testified positively that James was free to leave if he desired. Both officers
characterized McCarver's conversation with James as casual and cordial, not coercive or threatening. 
Both officers said James was not handcuffed, no officer exhibited a gun, and neither officer
exercised any restraint or force over James. Further, McCarver and Sartor both testified that James
let them into the house using his key.

 James testified that McCarver handcuffed him and searched him and his car before taking
his key and entering the house, but the trial court was free to disbelieve that testimony. As
mentioned previously, we afford almost total deference to a trial court's determination of the
historical facts that the record supports, especially when the trial court's fact findings are based on
an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d at 89.

 James notes that McCarver did not tell him that he had the right to refuse consent. Although
this is one factor to be weighed in considering the voluntariness of consent, it is not a factor to be
viewed in isolation. Here the evidence shows that McCarver engaged James briefly in a noncoercive
conversation and asked for his consent to search the Lumpkin Street home. Under these
circumstances, we conclude that James' subsequent consent to the search was voluntary.

 James also asks us to conduct an attenuation analysis to determine whether his consent to the
search was rendered ineffective by police illegality. He cites Viveros v. State, 799 S.W.2d 458, 461
(Tex. App.-Corpus Christi 1990), aff'd, 828 S.W.2d 2 (Tex. Crim. App. 1992). Viveros involved
an illegal traffic stop and subsequent consent to search the suspect's vehicle. The court of appeals
concluded the consent was obtained as a direct result of the illegal stop. 

 An attenuation analysis is used to determine whether the connection between illegal actions
of police and the discovery of evidence is so attenuated that the connection has dissipated to the
point that the evidence is admissible despite the officers' illegal conduct. Wong Sun v. United States,
371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441, 455 (1963). Thus, in Viveros, the court
conducted an attenuation analysis to determine whether the defendant's consent to the search was
valid in light of the illegal traffic stop. Viveros v. State, 799 S.W.2d at 461. Here there is no
evidence of any illegal conduct by the police, and James does not contend that McCarver did not
have a sufficient basis to approach him in the first instance.

 James next contends that even if his consent was voluntary, the subsequent search went
beyond the scope of the consent. When a person voluntarily consents to a search, the officer's
authority to perform the search is not without limit. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct.
1801, 114 L.Ed.2d 297, 300 (1991); DuBose v. State, 915 S.W.2d at 496; McAllister v. State, 34
S.W.3d at 351. The extent of the search is limited to the scope of the consent given, and the scope
of the consent is generally defined by its expressed object. Florida v. Jimeno, 500 U.S. at 251;
DuBose v. State, 915 S.W.2d at 496; McAllister v. State, 34 S.W.3d at 351. The standard for
measuring the scope of consent is that of objective reasonableness, i.e., what a reasonable person
would have understood by the exchange between the officer and the individual. Florida v. Jimeno,
500 U.S. at 251; DuBose v. State, 915 S.W.2d at 496; McAllister v. State, 34 S.W.3d at 351.

 A reasonable person in James' position would have understood that the object of the search
would be evidence of narcotics activity and that the search would be limited to places where such
evidence could reasonably be concealed. McCarver testified that he informed James of his suspicion
that the Akin Street address was being used for narcotics trafficking and asked him if he was
involved in that activity. James denied that he was involved in narcotics activity, and McCarver
asked for his consent  to  search  the  Lumpkin  Street  home. It  is not unreasonable to expect that
evidence of narcotics activity would be concealed in a decorative metal tin. Thus, the search did not
exceed its intended scope.

 The judgment is affirmed.

 William J. Cornelius

 Chief Justice


Date Submitted: October 18, 2001

Date Decided: November 7, 2001


Publish
1. If James did not have authority to consent to the search of the Lumpkin Street home, he also
does not have standing to protest the search of that home. He may, however, have standing to protest
the search of the metal tin, which he acknowledged at the suppression hearing belonged to him. He
did not make that contention at the suppression hearing and does not make it here.
2. At oral argument, James contended for the first time that an officer must have a reasonable
basis for requesting consent. He does not offer support for his position, and we conclude it is
untenable. See Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389, 400 (1991)
("[N]
o seizure occurs when police ask questions of an individual, ask to examine the individual's
identification, and request consent to search his or her luggage - so long as the officers do not
convey a message that compliance with their requests is required."); Hunter v. State, 955 S.W.2d
102, 106 (Tex. Crim. App. 1997) ("A police officer's asking questions and requesting consent to
search do not alone render an encounter a detention. Only if the officer conveyed a message that
compliance was required has a consensual encounter become a detention.").



20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-056-CV%20Smith%20v.%20Peek%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00056-CV

                                                ______________________________

 

 

                        JERRY SMITH, ON BEHALF OF THE
HEIRS OF

WADE AND CLARA SMITH,
Appellant

 

                                                                V.

 

                 HORACE E. PEEK AND ELIZABETH J. PEEK, Appellees

 

 

                                                                                                  


 

 

                                        On Appeal from the 76th Judicial District Court

                                                             Camp County, Texas

                                                        Trial Court
No. CV-08-773

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Horace
E. Peek and Elizabeth J. Peek purchased a 52.41-acre piece of real property
from Paul Mayben.[1]  Jerry Smith, on behalf of the heirs of Wade
Smith and Clara Smith, brought suit to quiet title against the Peeks, claiming
ownership of the property based on his distant relation to the Smiths, who became
owners of the property over a century ago.[2]  The Peeks filed a motion for summary judgment
and attached deeds purporting to trace title to the property back to the
Smiths, whose heirs had allegedly conveyed the property.  The Peeks argued that because they could
establish Jerry had no interest in the property, he could not be successful in
his action to quiet title.  They further
claimed they had established adverse possession in the form of actual and visible
appropriation of the property since 1986 under color of deed.  Smith appeals the trial courts summary
judgment granted in favor of the Peeks. 
Because the Peeks both traced title to a common source and established
adverse possession as a matter of law, we affirm the trial courts judgment. 

            Traditional
summary judgment is proper when the movant establishes that there is no genuine
issue of material fact and that the movant is entitled to judgment as a matter
of law.  Tex. R. Civ. P. 166a(c); City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979); Dresser Indus., Inc. v. Underwriters at Lloyds,
London, 106 S.W.3d 767 (Tex. App.Texarkana 2003, pet. denied).  Because the movant bears the burden of proof,
all evidence favorable to the nonmovant is taken as true, and all doubts as to
the genuine issue of material fact are resolved in favor of the nonmovant.  RhonePoulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999). Summary judgment for a defendant is proper when the defendant
pleads and conclusively establishes each element of an affirmative
defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 
Because the propriety of a summary judgment is a question of law, we
review the trial courts decision de novo.  See
Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex. 1994).  

            The
trial courts summary judgment specified no particular ground as supporting the
summary judgment.  When, as is the case
here, the trial court does not set out the grounds on which it ruled, we affirm
the summary judgment if any ground urged in the motion for summary judgment is
meritorious.  W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).

            A
copy of the 1986 deed from Mayben to the Peeks was attached to the motion for
summary judgment.  After setting forth
the metes and bounds description of Tract 2 of the Tanton Estate conveyed in
Maybens deed, the affidavit of Horace Peek stated:

            3.         I took possession of the
above-described property from Paul Mayben on August 11, 1986.  

            4.         A duly recorded deed reflects my
acquisition of the above-referenced property. 


            5.         Since taking possession of the
above-described property in 1986, I have enjoyed continuous and uninterrupted
use of the property.  I have paid taxes
on the property and use the property to the fullest extent possible.  

            6.         My possession of the above-described
property has been actual and visible, peaceable, and open and notorious, and I
have exercised exclusive control over who is granted use of an access to the
property.  To that end, I have utilized a
locked gate to prevent unauthorized entry onto my property. 

Peeks affidavit established the
claim of adverse possession under Section 16.025 of the Texas Civil Practice
and Remedies Code (five-year statute of limitations).  Tex.
Civ. Prac. & Rem. Code Ann. § 16.025 (West 2002).  Smiths response to the motion for summary
judgment and the exhibits attached thereto did not mention or raise any genuine
issues of material fact relating to Peeks adverse possession claim.  Therefore, the Peeks established their entitlement
to summary judgment on their adverse possession claim as a matter of law. 

            We
affirm the trial courts judgment. 

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          August
11, 2011

Date Decided:             August
16, 2011

 











[1]This
tract is known as Tract 2 of the Tanton Estate. 
Irvin and Nancy Tanton conveyed Tracts 1 and 2 of their estate to W. H.
Smith.   

 





[2]The
Smiths took possession of the property in question on January 26, 1892.