In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00181-CR
______________________________


HAROLD BERNARD JOHNSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 31864-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            After Harold Bernard Johnson pled guilty and was convicted of two bail-jumping offenses,



the trial court consulted a presentence investigation (PSI) report containing unadjudicated offenses,



before sentencing Johnson to serve seven years' confinement for each offense, to run concurrently. 
Johnson complains on appeal, in each case, only that it was error for the trial court to consider the
unadjudicated offenses in sentencing him. We disagree and affirm the judgment.
            Basing his argument on a line of United States Supreme Court cases beginning with Apprendi
v. New Jersey, Johnson argues that the trial court's consideration of these unadjudicated offenses in
the PSI report effectively allowed the court to consider prior criminal acts without requiring the State
to prove beyond a reasonable doubt that he had committed those crimes. See Shepard v. United
States, 544 U.S. 13, 161 L.Ed.2d 205 (2005); United States v. Booker, 543 U.S. 220 (2005);
Apprendi v. New Jersey, 530 U.S. 466 (2000).
The Apprendi line of cases holds that any fact, other than a prior conviction which
is necessary to support a sentence exceeding the maximum authorized by the facts
established by a plea of guilty or a jury verdict must be admitted by the defendant or
proved to a jury beyond a reasonable doubt.

Booker, 543 U.S. 220 (emphasis added).
            Johnson asks us to extend that reasoning. He argues that the cases hold, at their core, that
a defendant has the right not to have his or her punishment increased by findings or factors either not
proven beyond a reasonable doubt or admitted by the defendant. That position would require us to
go beyond the holding of those cases.
            Apprendi reviewed a state penalty scheme that allowed a jury to convict a defendant of a
second-degree offense based on a finding that he possessed a prohibited weapon. If the trial court
found that his purpose for possessing the weapon was "to intimidate" his victim on the basis of a
particular characteristic the victim possessed, the trial court could then impose punishment for a first-degree offense. The Court found the practice unconstitutional, ultimately holding that it was an
unacceptable departure from the jury system. The Court reiterated that judges could certainly
"exercise discretion—taking into consideration various factors relating both to offense and
offender—in imposing a judgment within the range prescribed by statute." Apprendi, 530 U.S. at
481. The Court then found the New Jersey scheme invalid because it violated the concept that "any
fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490
(emphasis added).
            Booker restated Apprendi in slightly different language:
Any fact (other than a prior conviction) which is necessary to support a sentence
exceeding the maximum authorized by the facts established by a plea of guilty or a
jury verdict must be admitted by the defendant or proved to a jury beyond a
reasonable doubt.

Booker, 544 U.S. 220 (emphasis added).
Shepard described the constitutional underpinnings as guaranteeing a jury standing
between the defendant and the power of the state, and they guarantee a jury's finding
of any disputed fact essential to increase the ceiling of a potential sentence.
Shepard, 544 U.S. at 24 (emphasis added).
            Each of these holdings assumes that the additional fact being considered moves the
maximum proper punishment to a higher level. That is not the situation posed by this appeal. 
Because the unadjudicated offenses in the PSI report did not increase Johnson's sentence beyond the
statutory maximum for the offense, the Apprendi line of cases does not apply.
            Even if we are wrong on that point, Johnson did not object to this portion of the PSI report,
nor did he object to the trial court's consideration of these matters during sentencing. See Tex. Code
Crim. Proc. Ann. art. 42.12, § 9(e) (Vernon Supp. 2005) (trial court to allow defense to comment
on, and, with court's approval, contest facts stated in, PSI report). His contention that his
constitutional rights were violated was not preserved for review. See Tex. R. App. P. 33.1; Briggs
v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (alleged denial of confrontation was not
fundamental, thus waived by failure to object); Duvall v. State, 59 S.W.3d 773, 779 (Tex.
App.—Austin 2001, pet. ref'd); Gerhardt v. State, 935 S.W.2d 192, 196 (Tex. App.—Beaumont
1996, no pet.).
 
 
            We affirm the judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          February 2, 2006
Date Decided:             March 21, 2006

Do Not Publish



nsent because he did not live at the Lumpkin Street home. (1) Nevertheless, there is
evidence from which the trial court could have concluded that James did consent, as both McCarver
and Sartor testified positively that James gave his verbal consent to the search. Though James denies
that he gave consent, the trial court was free to find the officers' testimonies more credible. (2)

 James also contends that, if he did give consent, he did not give it voluntarily. The test for
a valid consent to search is whether the consent was voluntary, a question of fact to be determined
from all the circumstances. Schneckloth v. Bustamonte, 412 U.S. at 248-49; Carmouche v. State, 10
S.W.3d at 331; McAllister v. State, 34 S.W.3d at 350. For consent to be voluntary, it must not be
the product of duress or coercion, actual or implied. Schneckloth v. Bustamonte, 412 U.S. at 248-49;
DuBose v. State, 915 S.W.2d 493, 496 (Tex. Crim. App. 1996), overruled on other grounds, Guzman
v. State, 955 S.W.2d at 90; McAllister v. State, 34 S.W.3d at 350. In Texas, the State is required to
prove by clear and convincing evidence that consent was voluntarily given. State v. Ibarra, 953
S.W.2d 242, 243 (Tex. Crim. App. 1997); McAllister v. State, 34 S.W.3d at 350.

 James contends that under the totality of the circumstances, his consent to the search of the
Lumpkin Street home was not voluntary. He cites United States v. Galberth, 846 F.2d 983, 987 (5th
Cir. 1988), as illustrative of the kinds of factors federal courts weigh in determining the voluntariness
of consent. In Galberth, the court outlined six factors: (1) the voluntariness of the defendant's
custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the
defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent;
(5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating
evidence will be found. These factors are similar to those the Texas Court of Criminal Appeals has
approved in determining the voluntariness of consent. See, e.g., Reasor v. State, 12 S.W.3d 813, 818
(Tex. Crim. App. 2000).

 Viewing the suppression hearing record in the light most favorable to the trial court's ruling,
we conclude James' consent to search the Lumpkin Street home was voluntary. McCarver and Sartor
both testified that James was not in custody or otherwise restrained when he gave his consent to the
search. McCarver testified positively that James was free to leave if he desired. Both officers
characterized McCarver's conversation with James as casual and cordial, not coercive or threatening. 
Both officers said James was not handcuffed, no officer exhibited a gun, and neither officer
exercised any restraint or force over James. Further, McCarver and Sartor both testified that James
let them into the house using his key.

 James testified that McCarver handcuffed him and searched him and his car before taking
his key and entering the house, but the trial court was free to disbelieve that testimony. As
mentioned previously, we afford almost total deference to a trial court's determination of the
historical facts that the record supports, especially when the trial court's fact findings are based on
an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d at 89.

 James notes that McCarver did not tell him that he had the right to refuse consent. Although
this is one factor to be weighed in considering the voluntariness of consent, it is not a factor to be
viewed in isolation. Here the evidence shows that McCarver engaged James briefly in a noncoercive
conversation and asked for his consent to search the Lumpkin Street home. Under these
circumstances, we conclude that James' subsequent consent to the search was voluntary.

 James also asks us to conduct an attenuation analysis to determine whether his consent to the
search was rendered ineffective by police illegality. He cites Viveros v. State, 799 S.W.2d 458, 461
(Tex. App.-Corpus Christi 1990), aff'd, 828 S.W.2d 2 (Tex. Crim. App. 1992). Viveros involved
an illegal traffic stop and subsequent consent to search the suspect's vehicle. The court of appeals
concluded the consent was obtained as a direct result of the illegal stop. 

 An attenuation analysis is used to determine whether the connection between illegal actions
of police and the discovery of evidence is so attenuated that the connection has dissipated to the
point that the evidence is admissible despite the officers' illegal conduct. Wong Sun v. United States,
371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441, 455 (1963). Thus, in Viveros, the court
conducted an attenuation analysis to determine whether the defendant's consent to the search was
valid in light of the illegal traffic stop. Viveros v. State, 799 S.W.2d at 461. Here there is no
evidence of any illegal conduct by the police, and James does not contend that McCarver did not
have a sufficient basis to approach him in the first instance.

 James next contends that even if his consent was voluntary, the subsequent search went
beyond the scope of the consent. When a person voluntarily consents to a search, the officer's
authority to perform the search is not without limit. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct.
1801, 114 L.Ed.2d 297, 300 (1991); DuBose v. State, 915 S.W.2d at 496; McAllister v. State, 34
S.W.3d at 351. The extent of the search is limited to the scope of the consent given, and the scope
of the consent is generally defined by its expressed object. Florida v. Jimeno, 500 U.S. at 251;
DuBose v. State, 915 S.W.2d at 496; McAllister v. State, 34 S.W.3d at 351. The standard for
measuring the scope of consent is that of objective reasonableness, i.e., what a reasonable person
would have understood by the exchange between the officer and the individual. Florida v. Jimeno,
500 U.S. at 251; DuBose v. State, 915 S.W.2d at 496; McAllister v. State, 34 S.W.3d at 351.

 A reasonable person in James' position would have understood that the object of the search
would be evidence of narcotics activity and that the search would be limited to places where such
evidence could reasonably be concealed. McCarver testified that he informed James of his suspicion
that the Akin Street address was being used for narcotics trafficking and asked him if he was
involved in that activity. James denied that he was involved in narcotics activity, and McCarver
asked for his consent  to  search  the  Lumpkin  Street  home. It  is not unreasonable to expect that
evidence of narcotics activity would be concealed in a decorative metal tin. Thus, the search did not
exceed its intended scope.

 The judgment is affirmed.

 William J. Cornelius

 Chief Justice


Date Submitted: October 18, 2001

Date Decided: November 7, 2001


Publish
1. If James did not have authority to consent to the search of the Lumpkin Street home, he also
does not have standing to protest the search of that home. He may, however, have standing to protest
the search of the metal tin, which he acknowledged at the suppression hearing belonged to him. He
did not make that contention at the suppression hearing and does not make it here.
2. At oral argument, James contended for the first time that an officer must have a reasonable
basis for requesting consent. He does not offer support for his position, and we conclude it is
untenable. See Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389, 400 (1991)
("[N]
o seizure occurs when police ask questions of an individual, ask to examine the individual's
identification, and request consent to search his or her luggage - so long as the officers do not
convey a message that compliance with their requests is required."); Hunter v. State, 955 S.W.2d
102, 106 (Tex. Crim. App. 1997) ("A police officer's asking questions and requesting consent to
search do not alone render an encounter a detention. Only if the officer conveyed a message that
compliance was required has a consensual encounter become a detention.").