Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



FREDERIC LUBRON BIRGANS,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-05-00034-CR

Appeal from the

382nd District Court

of Rockwall County, Texas

(TC# 2-04-207)




O P I N I O N

            This is an appeal from a jury conviction for the offense of possession of marijuana in an
amount of fifty pounds or less but more than five pounds. The court assessed punishment at four
years’ imprisonment. We affirm.
SUMMARY OF THE EVIDENCE
            On May 4, 2004, Texas Highway Patrol Corporal Kevin Cauley was on duty around 2:50
p.m. He was parked alongside Rockwall County Deputy Sheriff Burks on the southbound shoulder
of Interstate Highway 30, east of FM 549. Corporal Cauley noticed a vehicle with dark, tinted
windows that appeared to be speeding, although he did not take a radar reading at the time. Cauley
pulled out to catch up and used radar to display the vehicle’s speed. The car was traveling 69 miles
per hour in a posted 65 miles per hour zone. At that point, Cauley activated the emergency lights
and conducted a traffic stop.
            The vehicle was a black, four-door Chevy Tahoe with Alabama license plates. Cauley exited
his patrol car and approached the passenger side. He advised the driver and passenger that he was
a Texas Highway Patrol officer, explained the reason for the stop, and asked them to step outside. 
As he was talking, the driver fumbled around looking for something and the passenger would not
make eye contact with Cauley although the officer was standing right beside him.
            Cauley identified Appellant as the driver of the vehicle. After Appellant stepped to the back
of the vehicle, Cauley continued to question him about where he was going. Appellant responded
that he was going to Alabama from Dallas where he was closing out a car dealership. During the
conversation, the officer noticed that the side of Appellant’s neck was trembling and that he appeared
to be nervous. At that point, Deputy Burks pulled up and Cauley instructed him to talk to the
passenger. The passenger told Burks that they were in Texas visiting somebody that was sick and
the deputy relayed the information to Corporal Cauley. The two different stories raised Cauley’s
suspicions and he went to talk to the passenger. The officer observed two plastic cups in the center
console area and smelled the combined odors of an alcoholic beverage and a slight odor of
marijuana. Deputy Burks also noticed an odor of alcohol and raw marijuana. At that point, Cauley
asked Appellant whether there was anything illegal in the vehicle and for permission to look inside. 
Appellant answered that there were only some shoes, a Bible, and some clothes. He did not appear
to have a problem with the search, although Burks told Cauley that Appellant was “really pissed”
about it. Deputy Burks removed the passenger and opened the back door of the Tahoe. He found
a black bag and a big, plastic bale. Marijuana was discovered in the black bag. A chemist for the
Texas Department of Public Safety testified that the substance found in the bag was marijuana
weighing 20.75 pounds.
            On cross-examination, Corporal Cauley testified that he wrote Appellant a warning for
speeding and the improper window tint, but he issued a citation for an open container violation. He
admitted that officers stop a lot of cars, go beyond what they call a traffic stop, and engage the
drivers and passengers in conversation. Since his job is criminal interdiction, he is supposed to ask
those questions.
                                    WAS CONTINUED DETENTION JUSTIFIED?
            In his first issue, Appellant complains that the trial court erred by failing to suppress the
physical evidence and statements as the fruit of the poisonous tree. He argues that when the officers
detained him after writing the warnings and citations, they violated his constitutional rights under
the Fourth Amendment because the continued detention was not reasonably related to the purpose
of the initial stop and was not based on articulable facts. We review a trial court’s ruling on a motion
to suppress using the bifurcated standard articulated in Guzman v. State, 955 S.W.2d 85
(Tex.Crim.App. 1997). See Carmouche v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Krug
v. State, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref’d). We do not engage in our own
factual review because at a suppression hearing, the trial judge is the sole trier of fact and judge of
the credibility of the witnesses and the weight to be given to their testimony. See State v. Ross, 32
S.W.3d 853, 855 (Tex.Crim.App. 2000); Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App.
1990). We give almost total deference to the trial court’s ruling on (1) questions of historical fact
and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. 
Johnson v. State, 68 S.W.3d 644, 652-53 (Tex.Crim.App. 2002); Best v. State, 118 S.W.3d 857,
861-62 (Tex.App.--Fort Worth 2003, no pet.). We review de novo a trial court’s rulings on mixed
questions of law and fact if they do not turn on the credibility and demeanor of witnesses. Johnson,
68 S.W.3d at 652-53. As there were no explicit findings of historical facts by the trial court, the
evidence must be viewed in a light most favorable to the trial court’s ruling. Carmouche, 10 S.W.3d
at 327-28.
            The Fourth Amendment protects persons against unreasonable searches and seizures. Terry
v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Fourth Amendment
protections are implicated when a police officer stops a vehicle and conducts an investigation. 
Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 449-50, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412
(1990); Viveros v. State, 799 S.W.2d 458, 459 (Tex.App.--Corpus Christi 1990), affirmed, 828
S.W.2d 2 (Tex.Crim.App. 1992). In order to justify detaining the driver beyond what is necessary
to deal with the traffic violation, the officer must have “reasonable suspicion”--i.e., the officer must
have specific articulable facts, which, premised upon his experience and personal knowledge and
coupled with the logical inferences from those facts, would warrant the intrusion on the detainee. 
Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). These facts must amount to more than
a mere hunch or suspicion. Id. Rather, they must objectively support a reasonable suspicion that
some activity out of the ordinary is occurring or has occurred, some suggestion to connect the
detainee with the unusual activity, and some indication the unusual activity is related to crime. Id. 
An investigative detention not based on reasonable suspicion is unreasonable and, thus, violates the
Fourth Amendment. Id. at 242.
            Like any other search, an investigative detention must be “strictly circumscribed by the
exigencies which justify its initiation.” Id. at 243. The permissible scope of the intrusion will vary
to some extent with the particular facts and circumstances of each case. Id. “Additionally, Texas
courts recognize that investigative detentions become unreasonable when they are not reasonably
related in scope to the circumstances which justified the interference in the first place.” Id. at 244. 
The guiding principle is that an investigative detention must be temporary and last no longer than
is necessary. Id. at 245. The police officer should employ the least intrusive and fastest investigative
methods reasonably available to verify or dispel the officer’s suspicion. Id. “This limitation means
that once the reason for the stop has been satisfied, the stop may not be used as a ‘fishing expedition
for unrelated criminal activity.’” Id. at 243.
            However, in analyzing the reasonableness of the detention, we keep in mind that during a
routine traffic stop, an officer has the right to check for outstanding warrants and request: (1) a
driver’s license; (2) insurance papers; and (3) identification. Id. at 245 n.6. The officer may also
question the driver about ownership of the vehicle, the driver’s destination, and the purpose of the
trip. See Powell v. State, 5 S.W.3d 369, 377 (Tex.App.--Texarkana 1999, pet. ref’d). It is also
reasonable for the officer to ask similar questions of the passengers. See Duff v. State, 546 S.W.2d
283, 286 (Tex.Crim.App. 1977). If during the course of a valid traffic stop the officer develops a
reasonable suspicion that criminal activity is occurring, a continued detention is justified. Zervos
v. State, 15 S.W.3d 146, 151 (Tex.App.--Texarkana 2000, pet. ref’d). An officer may rely on all of
the facts ascertained during the course of his contact with a defendant to develop articulable facts
that would justify a continued detention. Sims v. State, 98 S.W.3d 292, 295 (Tex.App.--Houston [1st
Dist.] 2003, pet. ref’d); Powell, 5 S.W.3d at 377.
            In Davis, the defendant was stopped for suspicion of driving while intoxicated. Upon
questioning the suspect, the officers admitted their suspicion was dispelled. They did not smell
alcohol or drugs on Davis or emanating from his vehicle. The court held that the purpose of the
investigative detention was effectuated when the officers determined Davis was not intoxicated. 
Davis, 947 S.W.2d at 245. However, rather than stop the investigation and detention, the officers
continued to detain Davis to run a check on his driver’s license and to conduct a pat down search. 
The only reason given for the continued detention was the officers’ conclusion that Davis did not
appear to be someone who was on a business trip. The Court of Criminal Appeals held that the
officers’ conduct in that situation ran afoul of the Fourth Amendment:
[T]his conclusion was not based upon articulable facts which, taken together with
rational inferences from those facts, would warrant a man of reasonable caution in
the belief that continued detention was justified. Terry, 392 U.S. at 21-22, 88 S.Ct.
at 1880. Indeed, when viewed in an objective fashion, no known fact, or rational
inferences from those facts, would support the conclusion that appellant was engaged
in or soon would engage in criminal activity. Id.

The court concluded that the officers could not have formed a reasonable suspicion sufficient to
justify the detention once they determined Davis was not intoxicated. Id. at 245-46.
            Here, Appellant argues that Davis required the police officers to stop the investigative
detention once the traffic citations were issued. We find Davis distinguishable. Appellant was
talkative and nervous. He and his passenger gave differing stories as to why they were in the area. 
Both officers noticed the smell of marijuana and alcoholic beverages coming from the vehicle, and
two plastic cups filled with a dark liquid were seen in the car. It does not appear the officers used
dilatory tactics to detain Appellant longer than necessary. Given these circumstances, we conclude
that the search of the vehicle resulted from a valid investigatory detention sufficiently limited in
scope and duration. We overrule Issue One.
WAS THE CONSENT TO SEARCH INVALID?
            In Issue Two, Appellant contends his consent to search was invalid because it was tainted
by his illegal detention. While he does not question or analyze the voluntariness of his consent, he
does comment in his brief that because he was “really, really pissed” about the search, it is
questionable whether consent was actually given. However, both officers testified that Appellant
gave consent and this was a factual matter for the determination of the court. Romero, 800 S.W.2d
at 543.
            Regarding Appellant’s contention that the consent was tainted by his illegal detention, we
have already determined that the detention was not illegal. When consent to search is obtained
during the scope of a lawful traffic detention, the consent is valid. State v. Cardenas, 36 S.W.3d
243, 247 (Tex.App.--Houston [1st Dist.] 2001, pet. ref’d). We overrule Issue Two and affirm the
judgment of the trial court.

                                                                        ANN CRAWFORD McCLURE, Justice

October 5, 2006

Before Barajas, C.J., McClure, and Chew, JJ.
Barajas, C.J., not participating

(Do Not Publish)